OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1901.

---

(*Continued from Volume 165.*)

## LANG & SON, Appellants, v. WILLIAMS et ux.

### Division One, December 17, 1901.

**Deed to Married Woman: INTENTION TO DEFRAUD: DEBTS AND MEANS TO MEET THEM.** Where it appears from the evidence that in taking a deed to land to his wife no fraud upon his creditors was intended by the husband, and that, after making the purchase, he had ample other means remaining for the satisfaction of all his debts, no fraud arises by implication of law from the fact that a part of the consideration for the deed was furnished by him.

Appeal from Lawrence Circuit Court.—*Hon. J. C. Lamson,* Judge.

AFFIRMED.

*R. H. Davis* for appellants.

(1) A voluntary conveyance by a debtor is, as against prior creditors, presumptively fraudulent. Hoffman v. Nolte, 127 Mo. 120; Patton v. Bragg, 113 Mo. 595; Jordan v.

Vol 166 mo—1 (1)

Buschmeyer, 97 Mo. 94. (2) The burden of proof was on Mrs. Williams to show the following: (a) That her husband had ample means left in his hands, at the time of the conveyance from Constant to her, with which to pay his debts. Hoffman v. Nolte, supra; Snyder v. Free, 114 Mo. 360. (b) That he had the present ability to pay his debts, and that the condition of his means was such that payment could have been enforced by process of law, and that the property left on hand was accessible. Hoffman v. Nolte, 127 Mo. 136; Eddy v. Baldwin, 32 Mo. 369; State ex rel. v. Koons, 83 Mo. 323; Bump on Fraudulent Conveyances (3 Ed.), pp. 285, 287, 288 and 289. (c) And to show beyond a reasonable doubt the adequacy of her husband's means to pay his debts, and unless she has so shown the conveyance will be deemed fraudulent. Bump on Fraudulent Conveyances (3 Ed.), p. 285; and the following authorities there cited: Worthington v. Bullitt, 6 Md. 172; s. c. 3 Md. Ch. 99; Williams v. Banks, 11 Md. 198; s. c. 19 Md. 22; Seward v. Jackson, 8 Cow. 406; s. c. 5 Cow. 67; Henderson v. Dodd, 1 Bailey Ch. 138; Swartz v. Hazlett, 8 Cal. 118; Patton v. Casey, 57 Mo. 118. (3) Mrs. Williams took the title to the land and holds the same in trust for her husband to the extent that he, in fact, paid for it. Hardware Co. v. Horn, 146 Mo. 129; Richardson v. Champion, 143 Mo. 538. (4) A court of equity has the power, in vacating a deed for fraud, to decree that the land be sold and the proceeds applied to the payment of the grantor's debts. 2 Beach on Equity Juris., sec. 928, note 5, p. 994; Bump on Fraudulent Conveyances (3 Ed.), p. 567; Woodward v. Mastin, 106 Mo. 361; Lyons v. Murray, 95 Mo. 23; Cole v. Tyler, 65 N. Y. 73. (5) A homestead may be claimed in an estate held in common. Hart v. Leete, 104 Mo. 315.

*Joe French* for respondents.

In order to recover in this case, the plaintiff must show that the defendant, Jas. Williams, was insolvent at the time of the conveyance of the property in question to his wife, Mary, and that his debts could not be made legally out of his property. Ring v. Paint Co., 44 Mo. App. 111; Toof v. Marlin, 13 Wall. 47; Walsh v. Ketchum, 84 Mo. 427; Updegraff v. Theaker, 57 Mo. App. 45; Glacier v. Walker, 69 Mo. App. 288. Had this conveyance been a voluntary one from James F. Williams to his wife, Mary, it would not have been in fraud of creditors for the reason that the evidence shows that he reserved a sufficient amount of property to pay all his debts and many hundred dollars over. Bump on Fraudulent Conveyances (3 Ed.), 275, 276 and 278. The judgment in this case was rendered in Lawrence county. An execution issued and a return of no property found by the sheriff on which to levy. Now what would have been the result if plaintiff had ordered an execution to Barry county, which was adjoining, where defendant had, in accordance to the evidence, a one-half interest in two houses on a business street of Monett in said county, worth, according to all the testimony, $3,500 with an incumbrance thereon of $500 only? This property was subject to execution. Defendant also owned notes of the value $630, accounts collected of $100 and B. & L. stock worth $230; these are figures of appellant. Appellant insists on defendant claiming his rights of exemptions, and so figures. Our understanding is that the right of exemption is a personal right that may be claimed or not as the debtor elects. Holmes v. Corbin, 20 Mo. App. 497; Howland v. Railroad, 134 Mo. 474.

BRACE, P. J.—The defendants, James F. Williams and Mary Williams, are husband and wife. On October 18, 1893, E. B. Constant and wife by warranty deed of that date conveyed the north half of southeast quarter of section 13, township 26, range 29, containing eighty acres, in Lawrence

county, to, the defendant, Mary Williams, subject to an incumbrance of $700, the payment of which was assumed in the deed. Afterwards, on February 14, 1896, the plaintiff obtained judgment in the Lawrence Circuit Court against the defendant, James F. Williams, for the sum of $187.90, on which execution was issued to the sheriff of said county and returned *nulla bona*. Afterwards, on the thirtieth of June, 1898, this suit was instituted to subject said real estate to the payment of said judgment on the ground that the same was paid for with the money and property of the said James F. Williams, who at the time was insolvent, and the deed taken in the name of said Mary Williams for the purpose of hindering, delaying and defrauding the creditors of the said James F. Williams.

It appeared from the evidence that the indebtedness upon which the plaintiff obtained judgment accrued prior to October 18, 1893. That the consideration given for the land and two notes, executed by Constant of even date with the deed payable to the said James F. Williams, each for the sum of $331.57 with interest at the rate of eight per cent per annum, secured by a deed of trust on 63 acres of land in Barry county, worth about $700, was a stock of dry goods with which the said James F. and Mary had been doing business in a storehouse in Monett in said county, inventoried at $2,500, the consideration recited in the deed. That while the business was being conducted in the name of Williams Brothers, the brother, John, who conducted a saloon in a house on an adjoining lot, had no interest in the stock of dry goods. That the same was the proceeds of the moneys of the said James F. and Mary invested in the business in the proportion of $1,750 by James to $500 by Mary. That the two lots and houses in which the Williams Brothers conducted their several lines of business belonged to them as tenants in common in equal shares; that they were worth $3,500 and incumbered with a mortgage of $500. That James and his family resided in

the upper story of the house in which the dry goods business
was being conducted.    That the object in making the trade,
was to quit business and secure a home in the country.    That
soon after the trade was made the defendants removed to the
land in question and ever since have occupied it as a homestead.
That after the trade the said James F. had property and assets
which could have been reached on execution as follows:

Undivided half-interest in Monett lots and buildings
     worth over and above the mortgage........$1,500 00
Constant notes worth......................... 663 15
Outstanding accounts ........................ 100 00
Building and loan stock.................:... 230 00

     Total .............................$2,493 15

The only debts owing by James F. at the time of the
trade, that the industry of counsel for plaintiff has succeeded
in marshalling against these assets are the following:

Plaintiff's debt .................... .....$201 00
Dry goods account ........................... 60 00
Essex & Meredith ............................ 48 00
Commercial Bank ............................ 150 00

     Total .............................$469 00

Leaving a balance of assets over liabilities of $2,034.15
upon plaintiff's own showing.    As to these debts, however,
it may be as well to say that at the time of the trade James
F. Williams was not aware of his liability for plaintiff's claim
for liquors, probably furnished for the saloon of his brother,
and that the amount of that liability as ascertained by the
judgment was only $187.90.    That the debt to Essex & Mer-
edith was for services in making the trade, and that it does

not appear satisfactorily from the evidence that the debt of $150 to the Commercial Bank was in existence at the time of the trade, but without making any deduction on these accounts, it satisfactorily appeared that James F. Williams had ample means to meet all his indebtedness, after this transaction was consummated. That he could afford to be generous to his wife without being unjust to his creditors. [Bank v. Simpson, 152 Mo. 638.] The only way ingenious counsel manage to bring his affairs within the shadow of a suppositious insolvency is by deducting from the value of his assets, first $300 for personal exemption from execution, and then $1,500 for a supposed homestead in the Monett lots and buildings, held in common by James and his brother, losing sight of the fact that even if such a homestead could have been claimed, the very purpose and effect of this trade, by which the defendants acquired the homestead in question and to which they removed, directly after the trade, was to relieve those Monett lots and buildings from any possible claim of homestead, and expose them to the operation of any execution his creditors might have against him. Even with these deductions there would have been a surplus of assets amounting to $234.15.

It clearly appeared from the evidence that in taking the deed to the land in question in the wife's name, no fraud upon the creditors of James F. Williams was intended, and as the transaction left him with ample means for the satisfaction of all his debts, no fraud arose by implication of law from the fact that a part of the consideration for the deed was furnished by him. Hence, the judgment of the circuit court in favor of the defendants was for the right party, and the same is affirmed. All concur.