JOHNSON et al., Appellants, v. SUSAN MURPHY et al.

Division One, March 17, 1904.

1. **FRAUDULENT CONVEYANCE: Voluntary.** A voluntary conveyance is not *per se* fraudulent as to subsequent creditors, but is to be determined by all the circumstances.

2. ———: ———: **Subsequent and Existing Creditors.** At the time the voluntary deed was made by the grantor to his wife as a support for her old age, he was not insolvent, and it did not render him insolvent, for he still had other property amply sufficient to meet all his liabilities, and the wife's money had largely contributed to improving and making valuable the land conveyed. The deed was promptly put of record, the record was easily accessible, and he did not thereafter engage in any hazardous business, but after his death five years later allowances were made against his estate in excess of the assets. *Held*, that, there being an absence of all fraud in fact or intention, this voluntary deed to the wife could not be set aside at the suit of the subsequent creditors. Nor could it be set aside to pay a liability which did not become a binding liability until after his death.

3. ———: ———: **Existing Creditors: Uncertain Debt.** Four years before the grantor, without fraud in fact or intention, had conveyed his land by voluntary deed to his wife he had become surety for his brother as trustee of $1,200, and after his death five years after the deed was made, judgment was rendered against his estate for $96 for the interest due for the past year to the beneficiaries of the trust fund. But at the last annual

settlement of the estate, which still remains unsettled, the executor reported that he had in his hands $403 to be applied on that trust fund, and no showing is made of how much of that allowance will be paid out of the assets of the estate when it is settled. *Held,* that a court of equity, when called upon to set aside this deed, to pay such an uncertain demand in such an unsatisfactory condition on the ground that the debt was technically an existing one at the time the deed was made, should do so only when the rules of law clearly require it.

4. ————: ————: ————: **Rule of Law.** If the voluntary grantor in the deed which the suit of plaintiffs seeks to have set aside as being in fraud of existing creditors, was, at the time the deed was made, in prosperous circumstances and possessed ample means to pay his debts, and the deed or gift was a reasonable one according to the purpose for which it was made, it is valid, and will not be vitiated by the subsequent insolvency of the grantor unless that insolvency was produced by causes existing at the time of the conveyance.

Appeal from Daviess Circuit Court.—*Hon. Frank Sheetz,* Special Judge.

AFFIRMED.

*Peery & Lyons, Hugh C. Smith* and *O. G. Bain & Son* for appellants.

(1) The plaintiffs, Mrs. Johnson and Mrs. Roberts, are to be considered creditors of the deceased David Murphy, who was a surety on the bond of the trustee of their estate, from the date of the bond, even though the breach of the bond may not have occurred until long after its execution. Wait on Fraud. Conv. & Cred. Bills (3 Ed.), secs. 90, 91; Krueger v. Vorhauer, 164 Mo. 156; 14 Am. and Eng. Enc. Law (2 Ed.), p. 253. A surety is a creditor, and entitled to protection against fraudulent and voluntary conveyances from the time when his contingent liability was assumed, although he has no technical right of action until he has paid the debt. Reel v. Livingston, 34 Fla. 377; 8 Am. and Eng. Enc. Law (2 Ed.), p. 244 and note 1; Cramer v. Redford, 17 N. J. Eq. 367; Trezevant v. Ter-

rell, 96 Tenn. 528; Thompson v. Thompson, 19 Me. 244; Stone v. Myers, 9 Minn. 303; Choteau v. Jones, 11 Ill. 300 (50 Am. Dec. 460); Hagerman v. Buchanan, 14 Am. St. Rep. 744. A person liable on a contingent obligation is a debtor, so as to permit the other party to object to a fraudulent conveyance, even though no breach has occurred, or the liability has not become fixed. Bibb v. Freeman, 59 Ala. 612; Thompson v. Thompson, 19 Me. 244; Fearn v. Ward, 65 Ala. 33; Wright v. Nipple, 92 Ind. 310. A conveyance of real estate by the surety on a guardian's bond may be set aside as fraudulent though there was no breach of the conditions of the bond at the time the conveyance was made. Bowen v. State, 121 Ind. 235. (2) If the effect of the conveyance is to render the grantor unable to pay debts thereafter contracted, then the law presumes the intent to defraud subsequent creditors, and the statute is satisfied. Snyder v. Free, 114 Mo. 360. A false recital of the consideration in a deed from husband to wife is a badge of fraud. Benne v. Schnecko, 100 Mo. 250; Wait, Fraud. Conv. (3 Ed.), sec. 228. (3) If the conveyance had, in terms, provided that David Murphy should have and retain the use of and beneficial interest in the property, it would have been void upon its face, as a conveyance to his use. R. S. 1899, sec. 3397. If the proof is such that it may reasonably be inferred that such was the secret understanding of the parties, then the conveyance is equally void as if it had been written in the instrument. Bank v. Powers, 134 Mo. 446; Roberts v. Barnes, 127 Mo. 405; Donovan v. Dunning, 69 Mo. 436; Benne v. Schnecko, 100 Mo. 250; Bump on Fraud. Conv. (3 Ed.), 214; Snyder v. Free, 114 Mo. 360. Where a debtor conveys land to another without consideration, with the understanding that the ownership remains in the grantor, the land is subject to sale for the grantor's debts, whether or not the conveyance was made with fraudulent intent. Green v. Veder, 57 S. W. 522; Curtis v. Leavitt, 15 N.

Y. 122; Bump on Fraud. Conv. (4 Ed.), sec. 191. Where a conveyance is merely colorable, and a secret trust exists for the benefit of the grantor, it is void, not only against prior, but against subsequent creditors also, for the fraud in such a case is a continuing one. 14 Am. and Eng. Enc. Law (2 Ed.), p. 268; State to use v. Jacob, 2 Mo. App. 183; Stouton v. Boschert, 104 Mo. 393; note to 4 L. R. A. p. 353. And this is so regardless of the actual good faith of the parties thereto. Curtis v. Leavitt, 15 N. Y. 9; Mfg. Co. v. Steele & Walker, 36 Mo. App. 504. The later rulings of our Supreme Court seem to incline to the view that such a transaction should be opened up at the instance of subsequent as well as prior creditors. Lander v. Ziehr, 150 Mo. 403; 14 Am. and Eng. Enc. Law (2 Ed.), p. 267. (4) The acts of the parties subsequent to the conveyance, with reference to the payment of taxes, insurance, retention of possession by the deceased, and subsequent division of the land, in accordance with the terms of the will, were all admissible in evidence for the purpose of showing the original and continued purpose and intent in putting and keeping the title to the land in Mrs. Murphy. "Subsequent acts of the parties are to be considered in determining the motive and intent of the original transaction." Waite, Fraud. Conv., sec. 227; State ex rel. v. Bank, 80 Mo. 632; Bump on Fraud. Conv. (4 Ed.), sec. 298; Bump on Fraud. Conv. (3 Ed.), sec. 590. The declarations and admissions of the deceased at the time and subsequent to the conveyance of the land were admissible in evidence against his heirs and devisees and their grantees in this case for several reasons: (a) All of his acts and declarations at the time of the transfer are of course admissible as part of the res gestae. 14 Am. and Eng. Enc. Law (2 Ed.), p. 495; Gamble v. Johnson, 9 Mo. 597; Holmes Organ Co. v. Petit, 34 Mo. App. 536; Snyder v. Free, 114 Mo. 371. (b) The acts and declarations of a debtor charged with the execution of a conveyance in

fraud of creditors, made in the absence of the grantee, are admissible to prove the fraudulent purpose of the debtor. Holmes v. Braidwood, 82 Mo. 610; Gillett on Indirect and Collateral Evidence, sec. 288; 14 Am. and Eng. Enc. Law (2 Ed.), pp. 494, 495; Waite on Fraud. Conv., secs. 276 to 280; Sloan v. Coburn (Neb.), 4 L. R. A. 470. (c) The evidence in this case was amply sufficient to raise a presumption that the deceased remained in possession and control of the land conveyed, after the conveyance, and, in such case, all of his acts and declarations while so in possession, or control of the property alleged to have been voluntarily or fraudulently conveyed, are admissible in evidence against the alleged fraudulent grantee. Boyd v. Jones, 60 Mo. 454; Bump on Fraud. Conv. (1 Ed.), pp. 548, 549, 550; Waite on Fraud. Conv. (3 Ed.), secs. 277, 278, 279; 14 Am. and Eng. Enc. Law (2 Ed.), pp. 494, 495, 496, 497; Lander v. Ziehr, 150 Mo. 409. (d) But again, wherever a conspiracy is shown, between the debtor and his grantees to cover up the property and conceal it from creditors, all of the acts and declarations of the grantor are admissible as long as such scheme is in operation or existence. In the case at bar, the language of the will of the deceased indicates that he had a contingent or secret interest in some property which he was disposing of. The conduct of these defendants in joining together to divide up this land in accordance with the terms of the will, after the death of the deceased, and in fraud of the rights of the creditors whose claims had been probated against his estate, make them parties to the illegal transaction to such an extent as authorizes all of his acts and declarations, made at any time, to be given in evidence against them. Cordes v. Soraszer, 8 Mo. App. 61; Clark v. Cox, 118 Mo. 652; Weineich v. Porter, 47 Mo. 293; State ex rel. v. Durant, 53 Mo. App. 493; Williams v. Cashbeer, 53 Mo. App. 644. But while the declarations of the deceased are admissible in evidence against his heirs and estate, they are not

admissible in their favor. Perry v. Roberts, 17 Mo. 36; Nelson v. Nelson, 90 Mo. 460. (5) Although the court might find (we, however, respectfully insist that there is no evidence to warrant it), that Susan Murphy might have given some money to David Murphy, yet even if this were done after the Married Women's Act, and within the statute of limitations, this would not be a sufficient consideration to support the conveyance from David Murphy to his wife, no express promise of repayment having been shown. Snyder v. Free, 114 Mo. 371; Waite on Fraud. Conv., secs. 209, 210.

*Hall & Hall* and *A. H. Burkholder* for respondents.

(1) As to subsequent creditors, the conveyances were not fraudulent, unless made with intent to hinder, delay or defraud them, which fact must be proved. Leahr v. Murphy, 45 Mo. App. 524; Payne v. Stanton, 59 Mo. 160; Hurley v. Taylor, 78 Mo. 238; Bank v. Overall, 16 Mo. App. 510, 90 Mo. 410; Frank v. Caruthers, 108 Mo. 574; Lander v. Ziehr, 150 Mo. 413; Snyder v. Free, 114 Mo. 375; Loy v. Rorick, 71 S. W. 842; Krueger v. Vorhauer, 164 Mo. 163. For a voluntary conveyance to be fraudulent as to subsequent creditors it must be made with a view to contracting subsequent debts or engaging in some hazardous business. Gro. Co. v. Smith, 74 Mo. App. 423. (2) The property in controversy to the extent of the statutory amount, was the homestead of David Murphy and his wife, and had been since 1865, and to that extent was exempt from attachment and execution as to all creditors at the time of the conveyances, existing and subsequent, and no "fraud upon creditors can be perpetrated by any disposition the debtor may see proper to make of his homestead. It is beyond their reach, both at law and equity, and there can be no fraudulent disposition of such property." Chance v. Jennings, 159 Mo. 560; Bank v. Guthrey, 127 Mo. 193; Bartels v. Kin-

nenger, 144 Mo. 374; Grimes v. Portman, 99 Mo. 234; Kendall v. Powers, 96 Mo. 142; Davis v. Laird, 88 Mo. 436; Hart v. Leete, 104 Mo. 337. (3) The lands in controversy having been purchased by the husband in part with the wife's separate money and means, and the deed therefor having been taken by the husband in his own name, he held such title in trust for the wife in proportion to the amount of the wife's separate money used in paying for the lands. Jones v. Elkins, 143 Mo. 651; Rodgers v. Bank, 69 Mo. 560; McGuire v. Allen, 108 Mo. 403; Broughton v. Brand, 94 Mo. 169; Seay v. Hesse, 123 Mo. 450; Rice v. Shipley, 159 Mo. 399. Where land or other property is purchased by a husband with the proceeds of his wife's separate estate, it is in equity her separate estate, unless her intention to the contrary is shown, and this is the case although the title was taken in his name. Martin v. Colburn, 88 Mo. 231. (4) There is no evidence that David Murphy conveyed this land to his wife in trust for his own use. If that had been the purpose of the conveyance, he would have conveyed all his property owned at the time and that which he acquired afterwards, and no presumption that he conveyed it for that purpose can arise or be indulged in from the facts in this case. Ilgenfritz v. Ilgenfritz, 116 Mo. 435; Kinzey v. Kinzey, 115 Mo. 496; Price v. Kane, 112 Mo. 415; Curd v. Brown, 148 Mo. 92; Schuster v. Schuster, 93 Mo. 444; Gilliland v. Gilliland, 96 Mo. 525; Darrier v. Darrier, 58 Mo. 226; Seibald v. Christman, 75 Mo. 308. (5) The burden of proof was on plaintiffs to establish a resulting trust, and, in order to establish by parol a trust in lands, the evidence must be so cogent as to leave no room for reasonable doubt in the mind of the chancellor. Rogers v. Rogers, 87 Mo. 259; Johnson v. Quarles, 46 Mo. 426; Ringo v. Richardson, 53 Mo. 394; Kennedy v. Kennedy, 57 Mo. 76; Taylor v. Von Schraeder, 107 Mo. 226; Reed v. Painter, 129 Mo. 682;

Burdett v. May, 100 Mo. 16; Bradley v. Bradley, 119 Mo. 61.

BRACE, P. J.—This is a suit in equity by certain creditors of David Murphy, deceased, to set aside two deeds, on the ground that they are voluntary, without consideration, and in fraud of plaintiffs and other creditors of said deceased, in which on the hearing in the circuit court, the plaintiff's bill was dismissed, and they appeal.

By one of the deeds in question, dated April 1, 1892, duly acknowledged on the 6th of April, 1892, and filed for record in the office of the recorder of Grundy county on the 15th of April, 1892, the said David Murphy and Susan Murphy, his wife, for the recited consideration of $8,000 conveyed the southeast quarter of section 28 and the northeast quarter of the southeast quarter of section 27 in said county to David Patterson, and by the other of said deeds dated the 5th day of April, 1892, duly acknowledged and filed for record on the 15th day of April, 1892, the said David Patterson and wife for the recited consideration of $8,000, conveyed said real estate to the said Susan Murphy. Afterwards in the month of December, 1897, the said David Murphy died testate after having first made and published his last will and testament dated December 18, 1897, and admitted to probate on the 21st day of December, 1897, whereby he devised and bequeathed all his estate, after payment of his debts and funeral expenses, to his wife, the said Susan Murphy, and to his children, Henry O. Murphy, Ella Simmerman, Ollie M. Elliott, Aimy Kessler and Frank D. Murphy (by the name of David F.). Afterwards on the 5th day of January, 1898, letters of administration upon the estate of said David Murphy were duly issued by the probate court of said county to the said Frank D. Murphy, one of the executors of said will, and he entered upon the discharge of his duties as such and thereafter filed an

inventory and appraisement of the real and personal property of said estate. The real estate was appraised at the value of $3,915, and the personal property at the value of $380.97. And thereafter among others the following demands were allowed against said estate:

October 6, 1898. One demand in favor of Paris C. Stepp, executor of the estate of William Holt, deceased, for $301.93.

October 7, 1898. One demand in favor of Trenton National Bank of Missouri for $2,298.74.

November 15, 1898. One demand presented by Susan Murphy, Elizabeth Johnson and Mary Roberts for $1,296.00.

And on November 16, 1898. Three demands in favor of Paris C. Stepp, executor of William Holt, deceased, aggregating $2,234.26.

All aggregating the sum of $6,130.93, all bearing interest at the rate of 8 per cent per annum from date of allowance and classified in the 5th class.

The said Elizabeth Johnson, Mary Roberts, Paris C. Stepp, executor of the estate of William Holt, deceased, and the Trenton National Bank of Missouri, are the plaintiffs in this action. The other demands allowed against said estate amounted to the sum of $2,439.52.

By deed dated September 7, 1897, duly acknowledged and filed for record on the same day, Susan Murphy, for a recited consideration of $6,000, conveyed the real estate in controversy, so conveyed to her by Patterson as aforesaid, to the said Frank D. Murphy, who thereupon executed a deed of trust conveying said real estate in trust to secure the payment of a debt of about $2,100, to the Phoenix Mutual Life Insurance Company of Hartford, Connecticut, and afterwards by three quitclaim deeds, each dated April 8, 1899, duly acknowledged and filed for record, the said Frank D. Murphy conveyed to his sisters Aimy S. Kessler, Ollie M. Harper (formerly Elliott) and Ella Simmerman each

an undivided fourth interest in said real estate, and on the 2nd of January, 1899, the said Ollie M. Harper and husband by deed of that date conveyed the interest thus acquired by her to Albert E. Fisher.  The said Susan Murphy, Frank D. Murphy, Aimy S. Kessler and her husband, Ollie M. Harper and her husband, Ella Simmerman and her husband, Henry O. Murphy, Albert E. Fisher and Phoenix Mutual Insurance Company of Hartford, Connecticut, are the defendants in the case.

The petition and a certified copy of a bond constituting the demand aforesaid against the estate of David Murphy presented by Susan Murphy, Elizabeth Johnson and Mary Roberts to the probate court, and the allowance thereon by said court are as follows:

*Petition.*

"In the Probate Court of Grundy County, Missouri,
"November Term, 1898.

"State of Missouri, ex rel. Susan Murphy, Elizabeth Johnson and Mary Roberts, plaintiffs, v. F. D. Murphy, executor of the estate of David Murphy, deceased, defendant.

"Plaintiffs state that on the 5th day of January, 1898, the defendant F. D. Murphy, was duly appointed and qualified as executor of the estate, and of the last will and testament of David Murphy, deceased, by the probate court of Grundy county, Missouri; and still is such executor.

"That on the 22nd day of June, 1888, Thomas A. Murphy, Sr., as principal, and said David Murphy, deceased, and H. C. Lanius, as his securities, by their certain bond or obligation, a certified copy of which is hereto attached and made a part hereof, bound themselves unto the State of Missouri, in the sum of twenty-four hundred dollars, for the payment of which they bound themselves, their heirs, executors, and administrators, the conditions of said bond being that, whereas,

said Thomas Murphy, Sr., was on the 19th day of June, 1888, duly appointed by the circuit court of Marion county, State of Missouri, as trustee to take charge of the moneys and estate bequeathed to said Susan Murphy, Elizabeth Johnson and Mary Roberts during their natural lives, and to their children and heirs at law at their death, by the last will and testament of John Bashore, deceased, late of Marion county, Missouri. And if said trustee should well and faithfully execute said trust, care for and manage said estate, and loan said moneys according to law and the provisions of said will, render just accounts, pay and deliver all moneys and property to those entitled thereto, and perform all things touching the execution of said trust according to the provisions of said last will and testament required by law or the order or decree of any court having jurisdiction then the above bond to be void, otherwise to remain in full force and effect.

"These relators further state that the said Thomas A. Murphy, Sr., David Murphy and H. C. Lanius did not keep and faithfully perform the conditions of said bond, but broke and violated the same, in this, that the said trustee did not loan said moneys as it was his duty to do, but on the contrary thereof appropriated the same to his own use, and that said trustee did not render just accounts or pay and deliver said moneys to those entitled thereto as required by the conditions of said bond and the order of the circuit court, but failed to make settlement or account for said moneys, and failed to pay the interest thereon to these relators, as required by said bond, the orders of said circuit court, and the last will and testament of the said John Bashore, deceased.

"These relators further state that the said trustee now owes each of these relators the sum of thirty-two dollars as interest due on said trust fund to them respectively, and has failed and refused and still fails and refuses to pay the same to the relators.

"That the said trustee, Thomas A. Murphy, Sr., has conveyed, disposed of, and made away with, all his property and effects and is wholly insolvent.

"Relators therefore ask judgment against the estate of said David Murphy, deceased, and against the defendant, F. D. Murphy, as executor, as aforesaid, for the sum of twenty-four hundred dollars, the amount of the penalty of said bond, to be satisfied upon the payment of the sum of twelve hundred dollars, the amount of moneys actually received by the said Thomas A. Murphy, Sr., as such trustee, and the interest due these relators thereon, amounting to the sum of ninety-six dollars, and for all other proper relief."

*Certified Copy of Bond.*

"Know all men by these Presents:

"That we, Thomas A. Murphy, as principal, and H. C. Lanius and David Murphy as securities, are held and firmly bound unto the State of Missouri, in the sum of twenty-four hundred dollars, for the payment of which we bind ourselves, our heirs, executors and administrators. The condition of the above bond is that, whereas the above bounden Thomas A. Murphy was, on the 19th day of June, 1888, at the June term, 1888, of the circuit court of Marion county, Missouri, duly appointed by said court as the trustee to take charge of the moneys and estates bequeathed to Mary Roberts, Elizabeth Johnson and Susan Murphy during their natural lives, and their children and heirs at law at their death, by the last will and testament of John Bashore, late of Marion county, State of Missouri, now deceased. Now if the said trustee shall well and truly faithfully execute said trust; care for and manage said estate, and loan said moneys according to law, and the provisions of said will; render just accounts; pay and deliver all moneys and property to those entitled thereto; and perform all other things touching the exe-

cution of said trust according to the provisions of said last will and testament, required by law or the order or decree of any court having jurisdiction, the above bond to be void; otherwise to remain in full force and effect.

"Witness our hands and seals, this 22d day of June, 1888.

|  |  |
|---|---|
| "THOMAS A. MURPHY, | (Seal) |
| "H. C. LANIUS, | (Seal) |
| "DAVID MURPHY. | (Seal)" |

*Allowance.*

"Susan Murphy et al.,

v.

David Murphy, deceased.

"Now come said Susan Murphy, Elizabeth Johnson, and Mary Roberts, and file their petition, from which it appears that Thomas A. Murphy, as principal, and David Murphy, and H. C. Lanius as his securities, entered into bond unto the State of Missouri, in the sum of twenty-four hundred dollars, for the payment of which they bound themselves, their heirs, executors, and administrators, for the faithful performance of the duties of trustee, for the sum of twelve hundred dollars, which sum was to be held by him in trust until the death of the above named plaintiffs; that said sum was to be loaned at the current rate of interest, and the proceeds thereof paid annually to plaintiffs. That said Thomas A. Murphy did not pay the interest for the last past year, and there is now due them ninety-six dollars.

"The court, after hearing all the evidence, does order and adjudge that said twelve hundred dollars be allowed in class five, with eight per cent interest, and the sum of ninety-six dollars be allowed in class five, with eight per cent interest."

In the third annual settlement of the executor filed in the probate court on the 12th of February, 1901, and given in evidence by the plaintiffs, the executor charges himself with amount due estate on last settlement, $2,714.59, and credits himself with amounts paid out, $2,167.82, leaving a balance in his hands of $546.77, and therein is contained the following statement:

"The executor states that no trustee has been appointed to take charge of the trust estate belonging to Susan Murphy, Elizabeth Johnson and Mary Roberts since the order of distribution of this court was made. So that he has retained and held the $403 in bank ordered to be paid to such trustee."

This suit was instituted on the 20th of January, 1900. There is no question on the pleadings. The foregoing facts are established by the documentary evidence. The competent parol evidence that may be found in the record tends to prove the following additional facts: That the deeds in controversy were executed, acknowledged and recorded as aforesaid without any moneyed consideration passing between the parties at the time and solely for the purpose of vesting the legal title in Susan Murphy, wife of the said David Murphy. That the premises conveyed consisted of two hundred acres of land of the value of about $6,000, which for more than twenty-five years before that time had been the homestead upon which the said David Murphy and his said wife and family had resided. That at the time the conveyances were made the said David Murphy was the owner of other unencumbered property, real and personal, of the value of about five thousand dollars, and was out of debt, his only liability being his contingent liability as surety on the aforesaid bond of his brother, Thomas A. Murphy, of a fund of which his wife was one of the beneficiaries. That the indebtedness, for which the demands of the other plaintiffs were allowed against his estate in the probate court, was all incurred as surety for his said brother,

Thomas A. Murphy, long after said deeds were so exe-
cuted and recorded. That at the time this indebtedness
as surety was incurred his brother was a man of consid-
erable means, engaged in active business, apparently
solvent and so considered by the plaintiffs and those
conversant with his affairs, and so considered by him-
self, David Murphy, and his wife up to the time of
David Murphy's death. That all the demands allowed
against the estate of David Murphy, except about four
hundred dollars, were upon obligations of Thomas A.
Murphy on which the said David had become his
surety, entered into long after the deeds in question had
been executed and recorded, except the one upon the
bond of the said Thomas A., as trustee, as aforesaid.
That 160 acres of the land in question was purchased
by David Murphy in 1866 or 1867 for the sum of $1,280
and the remaining forty of less value per acre some
time afterwards. In the great mass of parol testimony
in the record (much of it hearsay, loose declarations,
rumors and opinions based upon no knowledge of the
facts, and of little probative force), while we fail to
find any satisfactory or substantial evidence that the
original purchase money of the premises came from
the separate estate of Mrs. Murphy, it is very evident
on the face of the whole evidence that the enhanced
value and improved condition of her husband's estate
after the purchase was largely the product of her in-
dustry, thrift, skill and management and perhaps to
some extent of her means and that at the time the deeds
in controversy were executed she was entitled to a rea-
sonable provision out of such estate, and considering
their execution in the light of all the circumstances dis-
closed by the evidence we have no hesitation in finding
that they were executed in good faith without any sin-
ister motive of the purpose of making such provision,
and without any intent on the part of the said David
Murphy or his wife, Susan Murphy, or either of
them to hinder, delay or defraud the creditors of

the said David Murphy, existing or subsequent, and the real question in the case is: did the said David Murphy, under the circumstances, have the right, as to the plaintiffs, to so convey the premises to his wife for the purpose aforesaid? In Pepper v. Carter, 11 Mo. 541, the law on this subject is thus laid down by this court, per SCOTT, J.: "The question as to what will render a voluntary conveyance void as to creditors under the statute, 13th Eliz., from which ours is borrowed, is one, like the continuing in possession of property after its sale, and like it has undergone much discussion, and is the subject of contradictory opinions. Some would make an indebtedness *per se* evidence of fraud against existing creditors. Others would leave every conveyance of the kind to be judged by its own circumstances, and from them infer the existence or non-existence of fraud in each particular transaction. Without determining the question as to existing creditors, we may safely affirm that all the cases will warrant the opinion that a voluntary conveyance as to subsequent creditors, although the party be embarrassed at the time of its execution, is not fraudulent *per se* as to them; but the fact, whether it is fraudulent or not, is to be determined from all the circumstances. I do not say that the fact of indebtedness is not to weigh in the consideration of the question of fraud in such cases, but that is not conclusive. Chancellor KENT, who maintains the most rigid doctrine in regard to the effect of voluntary conveyances against creditors, after a full examination of the authorities, concedes that actual fraud, or fraud in fact, must be proved, in order to set aside a prior voluntary conveyance at the suit of subsequent creditors." The doctrine thus laid down has been approved and uniformly maintained in a long line of decisions, and may well be said to be the settled law of this State. [Payne v. Stanton, 59 Mo. 158; Boatman's Savings Bank v. Overall, 90 Mo. 416, 16 Mo. App. 510; Frank v. Caruthers, 108 Mo. 569; Lander v.

Ziehr, 150 Mo. 403; Bank v. Simpson, 152 Mo. 638; Krueger v. Vorhauer, 164 Mo. 156; Loy v. Rorick, 100 Mo. App. 105.]

At the time the conveyances were made David Murphy was not insolvent, and the effect thereof was not to render him insolvent. He was not in embarrassed circumstances and the effect thereof was not to place him in such circumstances. The provision thereby made was a reasonable one in the light of all the facts in the case—for his wife, who had contributed so largely in making his estate what it was. Besides the property thereby conveyed, he had other property subject to process, amply sufficient to meet all his liabilities. The deeds were promptly put on record as soon as they were executed. The record was easily accessible to the plaintiffs and all others with whom he thereafter had business. He was not about to, and did not thereafter engage, in any hazardous business. Unfortunately he thereafter became the victim of a misplaced confidence in the financial ability of his brother Thomas A. Murphy, whose insolvency, disclosed after his death, precipitated this burden of indebtedness upon his estate, and this, and not the provision made for his wife in her old age, or any mismanagement of his own affairs, was the cause of the insolvency of his estate. In the absence of any fraud in fact, or intention, under the rulings in all the cases, under such circumstances, the chancellor was well warranted in holding that these deeds were invulnerable to the attack of the plaintiffs, Paris C. Stepp, executor of the estate of William Holt, deceased, and the Trenton National Bank, subsequent creditors of the said David Murphy, deceased, and in dismissing the bill as to them.

Should a different ruling prevail as to the other plaintiffs, Elizabeth Johnson and Mary Roberts, who it is claimed were existing creditors of David Murphy at the time the deeds were executed, from the fact that the bond which David Murphy signed as surety for

Thomas A. Murphy, trustee, dated June 22, 1888, was at the time of the making of the deeds an existing liability of his, although theretofore no breach thereof had ever been committed, nor ever thereafter during the lifetime of the said David Murphy? The position of these two plaintiffs in this litigation is anomalous. The only present interest they seem to have in the allowance of the probate court against the estate of David Murphy on said bond, in which proceeding the corpus of the fund secured by the bond was not represented by anybody, is the sum of thirty-two dollars each, being the share of each "in the interest for the last past year" on said sum of $1,200 secured by said bond; how much of that allowance will be paid out of the assets of David Murphy's estate when that estate is settled, it is of course impossible to tell. All we know is, that the estate still remains unsettled, and that the executor now has in his hands the sum of $403 to be applied on that demand when it is put in such shape as that he can with safety so apply it. A court of equity when called upon to set aside deeds in which there was no fraud in fact in behalf of such an uncertain demand, in such an unsatisfactory condition, on the ground that the debt was technically an existing one at the time the deeds were made, should do so only when the rules of law clearly require it, so our next inquiry is as to the rule in this State as to existing creditors.

But first as to the rule generally, as to conveyances without actual intent to defraud. It is well laid down in 14 Am. and Eng. Ency. of Law (2 Ed.), p. 301, *et seq.*: "The validity of voluntary conveyances as regards existing creditors is to be determined, therefore, by the answer to the inquiry: Is the donation such as a prudent man, perfectly acquainted with his financial condition, actuated by an honest purpose, and having due regard to the rights of his creditors, would have made under the circumstances? If at the time of the vol-

untary conveyance the donor is insolvent, the deed is fraudulent, and evidence that no fraud was intended can not change its character. So, if the execution of a voluntary conveyance, however meritorious in itself, leaves the donor with insufficient property to meet existing liabilities, it is fraudulent and void. Or, if the donor at the time of the execution of a voluntary conveyance, though not actually insolvent, is in embarrassed circumstances which eventually end in insolvency, the conveyance is void. If, on the other hand, the donor was at the time of the voluntary conveyance perfectly solvent and retained sufficient means to pay his debts, ought the conclusion of a fraudulent purpose to be drawn from the mere fact of their existence at the time and the donor's subsequent inability to discharge them?'' The author answers the question by saying, ''In some of the States it is held that the fact that the donor was solvent at the time of the conveyance is not sufficient to rebut the inference of fraud if the property donated is afterwards required to liquidate his liabilities.'' And after giving the arguments pro and con on the proposition, winds up by saying, ''It is held in a majority of the jurisdictions that if the donor at the time of the gift was in prosperous circumstances and possessed ample means to pay his debts, and the gift was a reasonable one according to the purpose for which it was made, it is valid and will not be vitiated by the subsequent insolvency of the donor not produced by causes existing at the time of the conveyance.''

The numerous cases cited in the notes to the article quoted from, fully sustains the text, and the decisions in this State are in harmony with those of the majority. [Bird v. Bolduc, 1 Mo. 701; Lane v. Kingsberry, 11 Mo. 403; Potter v. McDowell, 31 Mo. 62; Patten v. Casey, 57 Mo. 118; Walsh v. Ketchum, 84 Mo. 427; Snyder v. Free, 114 Mo. 360; Updegraff v. Theaker, 57 Mo. App. 45; Hoffman v. Nolte, 127 Mo. 120; Fehlig v. Busch, 165 Mo. 144; Lang v. Williams, 166 Mo. 1; Clark v.

Thias, 173 Mo. 628.] And applying this established rule to the facts of the case, which need not be repeated, it may well be held that the burden cast upon the defendants by this rule as to existing creditors has been as fully met and discharged by the evidence herein as was the one in regard to subsequent creditors, and that the court committed no error in dismissing the bill as to all the plaintiffs. Hence, the judgment of the circuit court will be affirmed. All concur.