# CITIZENS BANK OF HAYTI v. J. M. McELVAIN and A. McELVAIN, Appellants.

### Division One, March 2, 1920.

1. **FRAUDULENT CONVEYANCE: Grantor's Fraud: Intent.** The deed of the owner of real estate, subject to execution and sale, made for a valuable consideration to persons other than creditors, whereby the grantor entirely strips himself of property, leaving existing debts unpaid, is fraudulent, under the statute (Sec. 2881, R. S. 1909), since it hinders or delays the creditor in the collection of debts due him. Under such circumstances the very act of the conveyance itself hinders or delays a creditor, and the statute makes such a conveyance void and supplies the fraudulent intent.

2. ———: ———: **To Pay Another's Debts.** The conveyance of land by the owner to pay his own bona-fide debts is not fraudulent as to other creditors, but the owner cannot convey it to pay the debts of another, if thereby he hinders or delays his own creditors in the collection of their debts. A wife, however great her distress and however honest her intention, cannot convey her property to pay her husband's debts, if thereby she hinders or delays her own creditors.

3. ———: **Notice to Grantee: Payment After Attachment.** Even though the grantee in a fraudulent conveyance did not participate in the grantor's intention to defraud her creditors and it be conceded he was a purchaser in good faith up to the time the levy of the attachment was spread upon the records in the recorder's office, he was bound to take notice of such record and that the property had been attached on the ground that the conveyance was made to hinder or delay the grantor's creditors, and that being established, whatever payments be made thereafter, though previously agreed to be paid to the grantor, were not made in good faith, but were made with imputed notice of the fraud, and the conveyance is fraudulent as to all such subsequent payments and as to them must be set aside at the suit of the defrauded creditor.

Appeal from Pemiscot Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

AFFIRMED.

*R. L. Ward* and *S. J. Corbett* for appellants.

(1) Plaintiff positively failed to show (a) lack of consideration, (b) that Grace R. Tindle conveyed the property to hinder, delay or defraud her creditors, (c) that defendants had any knowledge of any fraud on the part of Grace R. Tindle or any facts or circumstances from which there could fairly be deducible any of the elements necessary to cancel and set aside the deeds. (2) In a suit to set aside a conveyance on ground of fraud, mere suspicion is not enough. Fraud must be proved as an affirmative fact; and the proof must be of such character as to convince the mind of the chancellor; for it is never presumed, and if the facts all consist as well with honesty as with fraud the transaction must be held honest. Black v. Epstein, 221 Mo. 310; Bank v. Worthington, 145 Mo. 100; Waddingham v. Loker, 44 Mo. 132; Dallan v. Renshaw, 26 Mo. 523; Robbinson v. Dryden, 118 Mo. 539; Coleman v. Hagey, 252 Mo. 102. (3) Plaintiff pleaded that Grace R. Tindle conveyed this property to hinder, delay and defraud her creditors, yet not a line of testimony was offered to this effect and no circumstances shown. The whole proof shows that her husband was bankrupt, that she had been sick many months and had a family of four children and was to give birth to a fifth and required the constant attention of a nurse and physician and didn't have any money whatever, and the family was moving to Youngstown, Ohio, where her husband was to occupy a position as bookkepper; and she did not have a dollar for the necessities of the family, herself and children, and the property was mortgaged, so she sold it to get money for the use of herself and family. One cannot conjecture or guess this sale to hinder or defraud creditors from this testimony. Link v. Hathaway, 143 Mo. App. 502; Bates Bank v. Railroad, 98 Mo. App. 330. It is not sufficient to cancel the deed, that a part of the purchase money went to pay a debt of her husband, when he had, in fact, given

her all the property. Wellman v. Investment Co., 262 Mo. 285. (4) At best plaintiff only showed that Grace R. Tindle was insolvent; that is, that after making this conveyance she had no property left except what was coming to her from the trustee in property conveyed in trust. It cannot be inferred that the conveyance was fraudulent from the fact that the grantor was insolvent or financially embarrassed when he executed it. Link v. Hathaway, 143 Mo. App. 502; State ex rel. v. Merritt, 70 Mo. 275; Gage v. Mear, 107 Mo. App. 140. (5) Not a line or intimation that defendants knew Grace R. Tindle was conveying this property with fraudulent intent. Henderson v. Henderson, 55 Mo. 534; Wall v. Bundy, 161 Mo. 625; Gust v. Hoppe, 201 Mo. 298; Smotherman v. Clothing Company, 154 Mo. App. 622; Farmers Bank v. Worthington, 145 Mo. 99. (6) A conveyance of land will not be declared fraudulent unless the grantee knew and participated in the fraud. Farmers Bank v. Worthington, 145 Mo. 91; State ex rel. v. Mason, 112 Mo. 374. Mere knowledge of facts or suspicious circumstances which would put an ordinarily prudent man on inquiry is not enough, though such facts may be given in evidence to be considered by the jury. Sammons v. O'Neill, 60 Mo. App. 530; Hern v. Dunn, 79 Mo. App. 322; Kelley v. Prickett, 84 Mo. App. 94.

*Von Mayes* for respondent.

(1) An attaching creditor may maintain an action to set aside a fraudulent conveyance of the property attached. Mansur v. Jones, 143 Mo. 253; Sec. 2344, R. S. 1909. (2) It is not necessary to make the grantor a party to the suit. Schneider v. Patton, 175 Mo. 684. (3) It is sufficient if the effect of the conveyance is to hinder or delay the creditors of the vendor. State v. O'Neill, 151 Mo. 85; Hewitt v. Price, 99 Mo. App. 666; Sec. 2294, R. S. 1909; 20 Cyc. 461; 2 Moore on Fraudulent Conveyances, p. 572; 2 Pomeroy's Equity Jurisprudence (4 Ed.), sec. 971, p. 2103; Oldham v. Wade, 273 Mo. 231. However, a conveyance made in good

faith to pay creditors is valid. First Nat. Bank v. Fry, 216 Mo. 24; Baker v. Harvey, 133 Mo. 653. (4) Where the purchaser has knowledge of facts sufficient to excite his suspicions and put him upon inquiry, he will be presumed to know all the facts which reasonable inquiry would have disclosed. State v. Purcell, 131 Mo. 312; Deere Plow Co. v. Sullivan, 158 Mo. 440; Bank v. Tobacco Co., 155 Mo. 602; Adams v. Gossom, 228 Mo. 583; 20 Cyc. 470, 481. (5) The sale may be void, though the purchaser pays a valuable consideration. Aull v. Gaffin, 234 Mo. 171; Sexton v. Anderson, 95 Mo. 373; Kurtz v. Troll, 86 Mo. App. 649. (6) Where property is sold by a debtor for the purpose of defrauding creditors, a bona-fide purchaser without notice is only protected to the extent of actual payment thereon prior to the attachment. Dry Goods Co. v. Hodges, 175 Mo. App. 493; Arnholt v. Hartwig, 73 Mo. 485; Daugherty v. Cooper, 77 Mo. 528; Young v. Keller, 94 Mo. 581; Kurtz v. Troll, 175 Mo. 506; Stein v. Burnett, 43 Mo. App. 477; Wetmore v. Woods, 63 Mo. App. 270; Bigelow, Fraudulent Conveyances, pp. 568, 600; 2 Pomeroy's Equity Jurisprudence (4 Ed.), sec. 750, p. 1539; 20 Cyc. 643.

GRAVES, J.—The plaintiff, a judgment creditor of Grace R. Tindle, brings this action to have declared fraudulent and void as to plaintiff, three several deeds made by Grace R. Tindle and her husband to the defendants, on the ground that the same were made to hinder, delay and defraud her creditors, including this plaintiff. Upon trial *nisi* the chancellor so decreed, and defendants have appealed.

The pertinent facts are Grace R. Tindle was indebted to plaintiff upon a note due July 8, 1913, in the sum of $2000. September 8, 1913, plaintiff filed suit upon said note; summons was issued September 22, 1913, and served upon September 30, 1913. September 30th, affidavit for an attachment was filed in the case, and writ of attachment was issued and served upon Grace R. Tindle upon that day, and an abstract of the

levy under the writ duly filed on the same day. Two days after the filing of the petition by the plaintiff, i. e. September 10, 1913, Grace R. Tindle, joined therein by her husband, executed the three deeds attacked in this case, covering three tracts of land. The aggregate expressed considerations was $7500. The defendants herein were the grantees in such deeds. Those deeds were placed of record on September 17th. On December 2, 1913, the circuit court sustained the attachment and gave the bank judgment for the amount of its note and interest. Later the present suit was instituted. In it, by answer, the defendants averred that they purchased in good faith and for value, and denied that such purchase was made by them with the intent to hinder, delay or defraud the creditors of Grace R. Tindle.

The three deeds stripped Grace R. Tindle of every vestige of property which she then owned. Her husband was then in trouble, and was afterward sent to the penitentiary. J. M. McElvain was a friend to the Tindles and lived just across the street from them. He was on Tindle's bonds in the criminal cases arising from a bank failure, and on them all the time. At the date of the conveyances Mrs. Tindle was indebted in a sum aggregating more than $10,000, but McElvain says that he had no knowledge of that fact.

The consideration was paid as follows, according to McElvain wired them $1500, to Ohio, and later paid her $500 more when he visited them at their home in Ohio. She also agreed that McElvain might retain $2500 of the purchase price to be applied on a joint note of $5000, given by her husband and McElvain to one Mitchell. the evidence. McElvain paid the husband of Mrs. Tindle, for her, $1000, at the making of the deeds, or about that time. Two thousand dollars was to be deducted, because of a deed of trust on the property in that sum.

The Tindles left Caruthersville, Missouri, for Youngstown, Ohio, the last day of September, or the day upon which the attachment was served. Going back to the question of the payment of the consideration, if in fact it was paid, the evidence of Mrs. Tindle is that

Thus the alleged consideration was made up. The
money payments ($1000 and $500) were paid in actual
cash instead of checks. The evidence also discloses
that the transaction was carried on by Mr. Tindle for
his wife. It further shows that McElvain and the Tin-
dles were close friends and that Tindle and McElvain
had dealt in lands together. Further Tindle, whilst in
the bank, had loaned money to McElvain. The agree-
ment that $2500 was to be applied upon the joint note
to Mitchell was made after the trade was closed, accord-
ing to McElvain, but Mrs. Tindle says that he would not
buy the property unless this $2500 was so applied, and
herein a material conflict.

Mrs. Tindle says that she sold the property because
she was sick and had to have money to support herself
and four children. Shortly afterwards she gave birth
to a child. She says that her husband was in financial
troubles and could not help her. Plaintiff was forced to
go to the camp of the enemy for its testimony and the
facts given here came from Mrs. Tindle and Mr. Mc-
Elvain. The price of $7500 is not shown to have been
far from the real value. Only about $1200 below, by
the best evidence.

As said, the court found the deeds fraudulent and
void in so far as they affected the rights of plaintiff.
Such are the facts of the record, leaving only details
connected with the central facts for the opinion.

I. We can shortly determine the situation of Mrs.
Tindle in this transaction. Her deeds stripped her of
the last vestige of property. Under such circumstances
her intent to hinder, delay or defraud her existing credi-
tors is shown by the very act. Her words can-
not controvert her acts. All property con-
veyed was property which was subject to exe-
cution. The homestead had been deeded in trust for the
payment of her husband's debts.

Grantor's
Fraud.

The property here conveyed was subject to the pay-
ment of plaintiff's debt, and the very act of the convey-
ances hindered or delayed plaintiff in the collection of

its debt.  The statute, Section 2881, Revised Statutes 1909, so far as applicable reads:

"Every conveyance . . . of any estate or interest in lands . . . made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, damages, forfeitures, debts or demands . . . shall be from henceforth deemed and taken, as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void."

The words "hinder," "delay" and "defraud" are connected by the word "or" in the statute, and it is sufficient if either result is accomplished by the conveyance.  In State to use v. O'Neill, 151 Mo. l. c. 85, we said:

"In this connection it should be borne in mind that subdivision 7 and 8 et seq. of Section 521 of the Attachment Act, Revised Statutes 1889, do not require that there should be a fraudulent intent to 'hinder, delay or defraud,' in making the conveyance; it is the legal effect of that conveyance which the law looks to; it suffices, therefore, that the result of the conveyance is either of those three forbidden things.  As is pertinently observed by RICHARDSON, J., in Reed v. Pelletier, 28 Mo. l. c. 177, 'The term fraud as understood in the statute concerning fraudulent conveyances, has the same meaning in the attachment law, and it is not necessary to show that the act originated in any meditated design to commit a positive fraud or to injure other persons.  There are many acts not the result of intentional fraud which the law, nevertheless, from their tendency to deceive other persons, or from their injurious consequences to the public, prohibits as being within the same reason and mischief as actual fraud.  And whatever, by the judgment of the law, is denounced as fraudulent must be regarded in the same light in reference to an act or transaction which is made the ground of an attachment; and if the act charged to have been committed is fraudulent, actual or constructive, it will be inferred that the party intended its natural and ordinary results should follow."

Not only so, but the intent is gathered from the effect of the particular transaction. If one conveys all the property he has (not in the payment of his or her debts) then the transaction within itself bespeaks fraud in law, as to the existing creditors of the party so conveying. In 20 Cyc. 462 et seq., we find the doctrine thus stated:

"Where, however, the effect of a particular transaction with a debtor is to hinder, delay, or defraud creditors the law infers or supplies the intent, although there may be no direct evidence of a corrupt or dishonorable motive, but on the contrary an actual, honest, but mistaken motive existed. The law interposes and declares that every man is presumed to intend the natural and necessary consequences of his acts; and the courts must presume the intention to exist, when the prohibited consequences must necessarily follow from the act, and will not listen to an argument against it. Hence it has been remarked that where a conveyance, by its terms, operates to hinder, delay, or defraud creditors, the intent to do so is imputed to the parties, and no evidence of intention can change that presumption. A conveyance will be set aside where it is made with intent either to hinder, delay, or defraud."

In Snyder v. Free, 114 Mo. l. c. 376, this court quotes with approval an announcement of the rule from Babcock v. Eckler, 24 N. Y. 623, whereat it was said:

"If the necessary consequence of a conceded transaction was defrauding another, then, as a party must be presumed to have foreseen and intended the necessary consequences of his own act, the transaction itself is conclusive evidence of a fraudulent intent; for a party cannot be permitted to say that he did not intend the necessary consequence of his own voluntary act. Intent or intention is an emotion or operation of the mind, and can usually be shown only by acts or declarations, and as acts speak louder than words, if a party does an act which must defraud another, his declaring that he did not by the act intend to defraud is weighed down by the evidence of his own act."

So also in the recent case of Barrett v. Foote, 187 S. W. l. c. 70, this court said:

"The father was a single man during all the times mentioned, and no one is dependent upon him for support. The property in his hands was not exempt from execution. The conveyance was invalid as to plaintiff, an existing creditor, regardless of the motives which actuated the father and son in making said deal, as no provision was made for the payment of plaintiff's demand. [Walther v. Null, 233 Mo. 104, 134 S. W. 993; Bank of Versailles v. Guthrey, 127 Mo. 189, 29 S. W. 1004, 48 Am. St. 621; Kegan v. Haslett, 128 Mo. App. 286, 107 S. W. 17; Massey v. McCoy, 79 Mo. App. 169; Wait on Fraudulent Conveyances, par. 10.]"

So that Mrs. Tindle's explanation as to why she conveyed the property is of no value here. The effect of her conveyances was to hinder, delay or defraud her existing creditors. Her intent must be gathered from the legal effect of her acts in a case like this, where she undertook to divest herself of all that she owned in property. We therefore proceed with the further issues in this record upon the assumption that Mrs. Tindle's intent was to hinder, delay or defraud this plaintiff and her other creditors. She paid no debts of hers, nor did she attempt to pay any of her obligations in the transactions. She did, it is true, say that she paid $2500 of her husband's debts, but this will not suffice to make the transaction bona-fide as to her creditors. We recognize the rule that one may convey his property for the payment of his or her bona-fide debts, but this rule does not apply when an attempt is made to pay some other person's debts in preference to the creditors of the grantor.

II. For the purpose of the point we now have in view we need not discuss the question as to whether or not defendants participated in the fraudulent intent of Mrs. Tindle at the time of the sale. The judgment in this

33—280 Mo.

**Bona-Fide
Purchasers:
Payment After
Attachment.**
case does not declare the deeds wholly void, but does declare them void and inoperative as against the claim of plaintiff. Up to the time of the attachment the defendants had only paid the sum of $1000 on the purchase price, so far as this record shows. It is clear that $2000 was paid in cash (as the parties aver) after the attachment, and after the levy of attachment was spread of record in the office of the recorder of deeds. The record of this levy was notice to the world that the property had been attached as the property of Mrs. Tindle. It was notice to defendants, in the language of this court, "of the imputed bad faith in their purchase." [Dougherty v. Cooper, 77 Mo. 1. c. 534.] In the making of future payments the defendants were bound to take notice of the attachment levy. In such payments they cannot hide behind the screen of purchasers in good faith, because such payments, in law, were made with full knowledge of plaintiff's claim, and the attachment proceedings, and therefore with full knowledge of the imputed bad faith of the defendants. The very purpose of filing an abstract of a levy in an attachment proceeding in the recorder's office is to give notice to the world, so that all future actions as to the property involved must be had with the notice which such record imports.

Defendants urge that they were bona-fide purchasers for value. Were they in fact and in law? Up to the date of the attachment it may be conceded that they were acting in good faith and without notice of the intent of Mrs. Tindle, as such intent is fixed by the law of such transactions.

At the date of this attachment these parties had paid but $1000 of the purchase price. The payments made thereafter (if such were made) do not come within the rule of a bona-fide purchaser without notice. The rule in such cases is thus stated in 20 Cyc. 643:

"To constitute one a bona-fide purchaser of property sold for the purpose of defrauding the vendor's creditors the whole consideration must be actually paid

before the purchaser has notice of the fraudulent intent. He is entitled to an equity *pro tanto* for money paid or property or security actually appropriated as payment before he received notice of the fraud; but not as to any payment he makes after such notice, nor as to any unpaid portion. Nor will he be protected where he takes the conveyance without any or at a grossly inadequate consideration without notice.''

The foregoing rule thoroughly accords with the views of this court. In, fact it is formulated largely from; our rulings. The rule is aptly illustrated in the case of Arnholt v. Hartwig, 73 Mo. 1. c. 488. In that case Arnholt bought goods of one Fredericks, and in payment therefor gave him a check for $500, which was not to be presented for payment until Arnholt's partner returned. Arnholt took possession of the goods, and whilst he was in possession they were attached by Fredericks' creditors. After the attachment Arnholt directed his bank to pay the check, which though negotiable, had not been negotiated by Fredericks. Under those facts, at page 487, this court said:

''There was evidence tending to prove that Fredericks sold the property for the purpose of hindering and delaying his creditors, and it may be conceded that at the time of the purchase Arnholt had no knowledge that such was Fredericks' purpose, and the question then arises whether notice to him of the attachment before the check on his banker was paid deprived him of the character of a bona-fide purchaser?

''We are of opinion that it did. 'No one but a purchaser for a valuable consideration can claim title to property which has been fraudulently assigned against the action of an attaching creditor. Such purchasers are protected' upon the equitable principle that they should not be deprived of that which they honestly and without notice of any fraud bought and paid for in fair dealing with the person holding the legal title. But the consideration must, in all cases, be actually passed before notice. Unless payment has been actually made in some shape, the authorities are quite clear that the pur-

chase will not be upheld. In equity a purchaser is protected to the extent of the payments actually made, and no further, even where future payments are provided for, unless those are secured in such a manner that the purchaser cannot be relieved against them. This could only happen where he gives negotiable paper; for upon a debt not negotiable the failure of title would exonerate him.' [Dixon v. Hill, 5 Mich. 408.] The foregoing extract from the opinion of the Supreme Court of Michigan states the doctrine on this subject as generally received both in England and the United States. In Paul v. Fulton, 25 Mo. 163, the court observes: 'It is held in this country and in England that actual payment is in general necessary to the character of a purchaser for valuable consideration, and that giving security or executing an obligation for payment will not be sufficient. Payments in bills or notes of third persons will, however, be equivalent in most cases to actual payment; and the same effect would seem to be due to payment in the notes of the purchaser, if negotiable in their character and actually negotiated so as to render him liable to pay them at all events.' In Wormley v. Wormley, 8 Wheat. 449, Judge STORY, said: 'It is a settled rule in equity that a purchaser without notice, to be entitled to protection, must not only be so at the time of the contract or conveyance, but must be so at the time of the payment of the purchase money.'

"In the case at bar the interpleader had given his check on his banker, and although there is no evidence to show that the check was negotiable, we may assume that it was; yet that fact cannot avail the interpleader, inasmuch as it was never negotiated, but was paid to Fredericks by the banker with the consent and by direction of Arnholt after the latter had notice of the attachment proceeding. By the payment under such circumstances, however innocent Arnholt may have been of any fraud in the purchase in the first instance, he became an actual participant in Fredericks' fraud upon his creditors."

From the foregoing it will be seen that we have approved every phase of the law as stated in 20 Cyc. supra.

Granting, for the purposes of this discussion, that defendants were in good faith and without notice at the time the deeds were made, yet with the subsequent notice given them by the attachment, they can only be protected to the extent of the $1000 paid at or about the date of the deeds. This is the only payment shown to have been made prior to the attachment. To like effect is Dougherty v. Cooper, 77 Mo. l. c. 534, whereat this court said: "The making of the levy on the goods under the facts of this case, was notice to Dougherty and Hutchinson of the imputed bad faith in their purchase, and after that they could make no payment in good faith."

The Dougherty case also recognizes the law that a payment made before notice of the fraudulent intent of the grantor, would be protected, but subsequent payments would not. In this Dougherty case a part of the purchase price had been paid before notice of the fraudulent intent of the vendor. We held, however, as to all subsequent payments the vendee was not a purchaser in good faith without notice.

In the later case of Young v. Kellar, 94 Mo. l. c. 591, after quoting with approval from both the Arnholt and Dougherty cases, supra, we further said:

"Our statute touching fraudulent conveyances levels its denunciations against all transfers of goods 'with the intent to hinder, delay, or defraud creditors,' and declares all such transfers as against creditors 'to be clearly and utterly void.' The only refuge a vendee has from the denunciations of this statute is, that, in good faith, he has bought and paid the purchase money prior to notice of the fraud. In a word, he cannot play the role of an innocent purchaser, while he remains in a situation to pay the money at will or to retain it at pleasure. For these reasons, instructions which left it to the jury to say whether payment had been made of the purchase price were erroneous, because they were

not supported by the testimony; and also because of misleading the jury into the belief that a payment made after notice of the levy of an attachment would give the purchaser so paying a valid title to the goods seized.''

So that in this case the only protection to which defendants are entitled on their own testimony is the $1000 payment. The decree only declares the deed ''fraudulent and void as against plaintiff and the said judgment of plaintiff and that same be·set aside, canceled and for naught held.'' The judgment then proceeds to direct a sale of Mrs. Tindle's interest in the property. When in this judgment the court says that the deeds shall ''be set aside, canceled and for naught held'' it means as against the plaintiff and its judgment, and not more. The defendants could discharge plaintiff's debt, before sale and leave their deeds in form. The evidence discloses that the property is worth at least $7500 expressed as the consideration, and this value will more than take care of the deed of trust for $2500 on the land, and the $1000 paid prior to the attachment, as well as the plaintiffs' judgment. No harmful results can follow from the affirmance of this judgment. We need not discuss the good faith of defendants when they received the deeds. The court finds they bought with notice of the fraudulent intent of the grantor, but it being clear that they did participate in this intent, after notice, by making future payments, is sufficient, and we need not discuss the other matter. The property is ample to protect plaintiff upon its judgment, and defendants upon the $1000 payment to Mrs. Tindle.

Let the judgment be affirmed. All concur.