HALBERT H. McCLUER, Trustee in Bankruptcy of the Estate of NAN-NIE I. PAYNE, Bankrupt, Appellant, v. GUILES WHITE, NANNIE RUTH WHITE, BRUCE WHITE, EDNA WHITE, ELIZABETH M. KER-WIN, FRANK KERWIN, CHARLES A. PAYNE, WILLIAM D. PAYNE, CLARENCE E. PAYNE, VERNA I. CHANCEY and JAMES R. CHAN-CEY.—93 S. W. (2d) 696.

Division Two, April 23, 1936.

L. E. Atherton for appellant.

1018

*P. M. Marr* for respondents.

COOLEY, C.—Suit in equity to set aside a deed as being in fraud of creditors. Finding and judgment for the defendants and plaintiff appeals. Plaintiff is trustee in bankruptcy of Nannie I. Payne, grantor in the assailed deed. His authority to institute and prosecute the suit is not questioned. Defendant Guiles White is the surviving husband and Nannie Ruth, Bruce and Edna White are minor children (represented by guardian *ad litem*), of Delia V. White, a daughter of Nannie I. Payne who died after the conveyance in question. Frank Kerwin and James R. Chancey are, respectively, husbands of Elizabeth M. Kerwin and Verna I. Chancey, daughters of Nannie I. Payne. The other defendants are children of Nannie I. Payne. Defendants claim title through the deed sought to be set aside.

By the deed in question, a general warranty deed, dated and executed June 25, 1929, and recorded the same day, Nannie I. Payne conveyed to all of her children, for a recited consideration of "love and affection and one and no/100 dollars," four described parcels of real estate situated in Milan, Missouri. The value of the real es-

tate so conveyed is not shown. From the rentals received from it, as shown by the evidence, the value could not have been very large. The only other real estate she then owned was a house and lot in Milan, referred to as the residence property, well located and well improved. That she retained. She had but very little money and no other personal property aside from her household goods. Her husband, D. A. Payne, had died in January, 1929. We gather from the record and briefs that prior to D. A. Payne's death, he and his wife, Nannie, owned all of the real estate above mentioned as tenants by the entirety, she, therefore, becoming sole owner upon his death.

On October 10, 1924, D. A. and Nannie I. Payne borrowed $4000 from a life insurance company and to secure the loan gave a first deed of trust on the residence property above referred to. That loan, due October 10, 1929, was outstanding on June 25, 1929, when Nannie I. Payne made the conveyance herein sought to be set aside.

It does not appear from the record what, if any, estate D. A. Payne left, nor what, if any, debts he owed, aside from the $4000 note above referred to and two small notes, to be presently mentioned. It is fairly inferable, however, that his estate was not sufficient to pay said two small notes.

Mrs. Payne, called as a witness by plaintiff, and upon whose testimony plaintiff's case largely depends, testified that after her husband's death two notes turned up, one, a small note, the exact amount of which is not disclosed, to a Mr. Price, and one of about $200 to a Mr. Quigley. She said she did not sign those notes and did not know of their existence until they were presented for payment. It seems, however, that her name appeared upon them as comaker with her husband. We suspect that her husband had signed her name to them without consulting her. Be that as it may her testimony shows that when she learned that her husband had given the notes she, desiring that his debts be paid, agreed to pay them, and did so. The actual payment was not made until shortly after the execution of the deed to her children. In the meantime Price, becoming impatient, had sued on his note, but Mrs. Payne's uncontradicted testimony is to the effect that before Price filed suit she had told him she intended to and would pay the note. It is not disputed that both those notes were paid in full. Except for those two small notes and the $4000 note secured by the deed of trust on the residence Mrs. Payne had no debts or liabilities, present or contingent, at the time she made the deed to her children. The children knew of the $4000 note and deed of trust.

Relative to the consideration for the deed Mrs. Payne testified: "I wrote the children in the spring after their father died, and I told them there wasn't enough income on this property to take care

of me and pay the expenses, and if they thought it best I would sign it over to them and them take care of me. . . . I was to have the rents and they was to supply me with money in my needs. . . . There wasn't enough income to pay taxes, insurance and $120 every six months to the loan company that I was paying without their help." On this point she further testified, speaking of the above-mentioned debts, "The children was to help and send the money to fix up these things was why I deeded the property away." She testified that when she made the conveyance to her children she believed the residence property to be worth about $6000 and that she "didn't want to give it up." She testified that, at the time of the trial, she still thought the property was worth, in June, 1929, five or six thousand dollars.

About July, 1929, and after the conveyance to her children, Mrs. Payne renewed and paid for the insurance on the residence property. In October or November, 1929, she paid the interest ($120), due October 10, 1929, on the $4000 loan, and about January 1st or 2nd, 1930, paid the 1929 taxes on the residence property. The amounts paid for insurance and taxes are not shown. The property was assessed for taxation at a valuation of $6000. It is not clear whether or not Mrs. Payne paid the interest due April 10, 1930, on the $4000 loan. There is some evidence indicating that she may have done so. Her schedule of debts, filed in the subsequent bankruptcy proceeding (referred to hereafter) lists the debt to the insurance company as $4000, secured by deed of trust (describing it) "due October 10th, 1929, and interest thereon from April 10th, 1930." The schedule further recites "which said deed of trust has been foreclosed and the above property sold for the sum of $1000 to a representative of said Life Insurance Company." It was offered in evidence by plaintiff. From her testimony, however, we get the impression that she did not pay the April, 1930, interest.

H. B. Hill, president of the insurance company, testified by deposition for plaintiff that he was in Milan about February or March, 1929, on other business and talked with Mrs. Payne about her loan; that he told her he thought the security was depreciating and that when it matured the company would have to have the money or additional security; that "She said that when Uncle Dan (D. A. Payne) died that she found that he had given some notes she didn't know anything about on which her name was on as security, and she stated that they was attempting to hold her on those obligations and she wasn't going to stand for it, that she was going to hold onto the property that Uncle Dan had left, and if it was necessary she was going to deed her property to the children in order to evade that."

Mrs. Payne denied having had such conversation with Hill. She said the only time she saw Hill in 1929 was about October of that

year, when he asked her if she could pay the loan. (That was after the conveyance to the children.) Defendants' counsel sought to show by Mrs. Payne what Hill then said about the security but were precluded by plaintiff's objections, which the court sustained. While a formal offer of proof was not made it is fairly apparent from counsel's remarks, *arguendo*, to the court that he was proposing to show that Hill, representing the insurance company, then expressed the opinion that the security was sufficient.

In the early part of August, 1930, the insurance company foreclosed its deed of trust and bid in the property for $1000 and was the owner thereof at the time of this trial. After that sale and on August 14, 1930, Nannie I. Payne was adjudged bankrupt. No debts were scheduled in the bankruptcy proceeding other than the one above mentioned to the insurance company. No assets were shown except household and kitchen furniture, valued at $110.

Defendants called five witnesses to prove the reasonable market value of the property which Mrs. Payne retained, viz., the residence property covered by the $4000 deed of trust, in June, 1929, when she conveyed the other parcels of real estate to her children. All had lived for many years in Milan and were familiar with said residence property and with property values there. Their estimates varied from four to six thousand dollars, thus: One stated that said property would have been cheap at $4000; another, that it would have been cheap at $5000; another placed the value at $6000; and the other two at $5000 to $5500. We have already noted that Mrs. Payne thought said property was worth at that time $5000 to $6000 and that it was carried on the assessment rolls for purposes of taxation at $6000. Defendants' evidence also tended to prove that real estate values in Milan had decreased between June, 1929, and August, 1930. There was no counter evidence offered as to the value of said property.

In our opinion, on the facts of this case, the judgment of the circuit court should stand. Plaintiff's petition is evidently bottomed on Section 3117, Revised Statutes 1929 (Mo. Stat Ann., p. 1946), which provides that conveyances made or contrived with the intent to hinder, delay or defraud creditors shall be deemed and taken, as against said creditors, to be void. The petition herein, after pleading the facts showing plaintiff's right as trustee in bankruptcy to proscute the suit, alleges in substance that on June 25, 1929, Nannie I. Payne owned certain real estate (describing the four parcels conveyed), and that on said date "while hopelessly insolvent and greatly indebted and with the purpose of hindering, delaying and defrauding her creditors she pretended to sell and convey" said real estate to her children (naming them), "for an alleged and pretended consideration of love and affection and one dollar;" that no consideration was in fact paid but that the deed was a voluntary

one, made by the grantor for the purpose and with the intent to hinder, delay and defraud her creditors, of which intent the grantees had knowledge; that said conveyance left said grantor insolvent and that she so remained; that "said transfer was made with the intent and purpose to enable the said Nannie I. Payne to defraud her creditors and prevent the collection of their just debts from her out of the same; while in truth and in fact the property hereinabove described belongs to the estate of said Nannie I. Payne and that plaintiff is entitled to the same for the purpose of applying said property to the debts of the said Nannie I. Payne, and in equity and good conscience said property above described (is) subject to the payment of the claims allowed in the matter of Nannie I. Payne, bankrupt."

There are other allegations in the petition setting forth the relationship of the parties to the deed and to the suit and reiterating the charge that the conveyance was in fraud of creditors and left the grantor insolvent, but the foregoing, in substance and effect, states the allegations upon which relief is sought.

We think the evidence in this case does not show fraudulent intent on the part of Mrs. Payne in making the conveyance unless such intent may be inferred or presumed from the facts that she was indebted at the time and that the conveyance was made without consideration valid as against creditors. In other words the evidence justifies the finding that she did not make it with the actual intent or purpose to hinder, delay or defraud creditors. It is true Mr. Hill testified that she intimated to him that she contemplated deeding the property to her children if necessary to escape paying the Price and Quigley notes. He did not say that she in any way intimated a purpose to try to evade payment of the $4000 note. But she positively denied having made such statement. The trial judge heard her testimony and saw her demeanor on the witness stand and evidently believed her, as from all the facts and circumstances in evidence we think he was justified in doing. She testified that, while she had not signed those notes and had not known of their existence, yet when she learned of them she told the holders she would pay them, "because that was something Mr. Payne always did, was pay his debts," and "I will settle that note, because I don't expect no debts to follow me." And she did pay them. She had no other debts except the $4000 note, which she thought was amply secured. According to her testimony she believed she had a substantial equity in the residence property, which she wanted to keep. Indicative of sincerity in such belief and hope, she renewed and paid the insurance on the residence property after the conveyance, paid the 1929 taxes thereon and paid at least one $120 installment of interest on the $4000 note, that falling due October 10, 1929, when

the note matured. Her conduct indicates good faith and honesty of purpose.

The mere fact alone that a conveyance is voluntary does not render it void. ''That is a question of fact to be determined from the conditions surrounding the party at the time of making the conveyance. The true rule seems to be that if the conveyance is voluntary the burden rests upon the party accepting the conveyance to establish the circumstances which will repel the presumption of a fraudulent intent.'' [Citizens' Bank of Union v. Hilkemeyer, 325 Mo. 849, 859, 29 S. W. (2d) 1090, 1094 (2), quoting from Clark v. Thias, 173 Mo. 628, 73 S. W. 616.] In Citizens' Bank v. Hilkemeyer, supra, we held that the plaintiffs' evidence relieved the defendant of that burden.

A conveyance, however, may be fraudulent in fact and void as to creditors under the statute, regardless of the actual intent or motive of the grantor, if the necessary consequence thereof is to hinder, delay or defraud creditors. [Citizens' Bank of Hayti v. McElvain, 280 Mo. 505, 219 S. W. 75.] Is the deed in question void as to creditors on that theory? We think not.

The question must be determined in the light of conditions existing at the time the conveyance was made. [Citizens' Bank of Union v. Hilkemeyer, supra; Welch v. Mann, 193 Mo. 304, 315, 92 S. W. 98; Updegraff v. Theaker, 57 Mo. App. 45; Christopher-Simpson Iron Works v. Bajohr (Mo. App.), 190 S. W. 615.] At the time of the conveyance here in question Mrs. Payne owed no debts except the $4000 note and the Price and Quigley notes. The latter two notes she was arranging to pay and very soon thereafter did pay. They may be left out of the reckoning. [Klaber v. Booth (Mo.), 49 S. W. (2d) 181; 27 C. J., p. 499, sec. 161.] That leaves only the $4000 note, which was secured by a first deed of trust on the residence property. We have summarized the evidence as to the value of that property in June, 1929, when the conveyance was made. From that evidence as a whole we think it fairly appears that the security for the $4000 note was then reasonably worth $5000 to $5500, a sum considerably in excess of the secured debt. In Klaber v. Booth, supra, l. c. 182, the court says: ''It has been held that a debt, which was sufficiently secured or which was afterwards paid, should not be considered in determining whether or not a conveyance was fraudulent,'' citing 27 Corpus Juris, 498, sections 160, 161. [See, also, Welch v. Mann, 193 Mo. l. c. 325, 92 S. W. 98.] Also, if at the time of making the conveyance the grantor retained ample means to pay his debts and the gift was a reasonable one, according to the purpose for which it was made, the conveyance is valid. [Citizens' Bank of Union v. Hilkemeyer, supra; Johnson v. Murphy, 180 Mo. 597, 614, 79 S. W. 909, 912; May v. Gibler, 319 Mo. 672, 677, 4 S. W. (2d) 769, 771 (4); Welch v. Mann, supra.]

It is now suggested in appellant's brief that the deed in question was a conveyance in trust to the use of the grantor, and void as to creditors for that reason under Section 3116, Revised Statutes 1929 (Mo. Stat. Ann., p. 1942). As we said of a similar contention in Citizens' Bank of Union v. Hilkemeyer, supra, that contention seems to be an afterthought. Appellant argues that the case was tried below on that theory. We do not so read the record. We think it was tried on the theory and issues presented by the petition.

Mrs. Payne, grantor in the deed in question, cannot be charged with foreknowledge at the time she made the deed (nor can the grantees), of the now well-known business depression that set in thereafter and which, at the time of the sale of the residence property under the deed of trust, doubtless affected adversely real estate values and real estate sales in Milan, as elsewhere. The $4000 note was sufficiently secured when the assailed conveyance was made and, so far as shown by the evidence, there existed no reason to think that the security would not remain equally good until the maturity of the note. Nor is there anything in the evidence to indicate that it did not so remain. The note matured October 10, 1929, and the deed of trust could then have been foreclosed if the holder of the note thought the value of the security was depreciating. The other debts Mrs. Payne owed at the time she made the conveyance she had arranged to pay and did pay. We think the judgment of the circuit court is right. It is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.