Robert P. DICKINSON and Janet K. Dickinson, and Legal Aid Society of Polk County, Inc., Plaintiffs–Respondents,

v.

Edward RONWIN, Arkiana, an Iowa General Partnership, and Richard W. Maes and Carol Maes, Defendants–Appellants.

Nos. 20589 & 20691.

Missouri Court of Appeals,
Southern District,
Division One.

Oct. 31, 1996.

Motion for Rehearing or Transfer to Supreme Court Denied Nov. 19, 1996.

Application to Transfer Denied Dec. 17, 1996.

Edward Ronwin, Beaver Creek, MN, pro se.

Robert C. Oberbillig, Des Moines, Iowa, Debra L. Moore, Sunrise Beach, MO, for plaintiffs-respondents.

PER CURIAM.

In this consolidated appeal, Edward Ronwin (Ronwin), Richard W. Maes and Carol Maes (collectively referred to as "Maes") appeal from an adverse judgment by which a transfer of Ronwin's interest in a partnership to the Maes was set aside as fraudulent; Ronwin appeals from a $25,000 judgment for punitive damages; and the Maes appeal from the dismissal of their counterclaims for slander of title and fraud. In this opinion, Ronwin and the Maes will sometimes be referred to collectively as "Appellants."

The instant dispute had its genesis in a suit filed in Iowa by National Child Care, Inc. (a corporation in which Ronwin was the sole shareholder) against Robert P. Dickinson and Janet K. Dickinson (the "Dickinsons"). Trial of that case began on May 20, 1991 and concluded on May 30 when the trial court directed a verdict for the Dickinsons. On September 27, 1991, the Iowa trial court entered a $20,000 judgment in favor of the Dickinsons against Ronwin, and a $10,000 judgment against Ronwin in favor of the Legal Aid Society (Legal Aid) as sanctions in connection with the Iowa suit.[1]

The Dickinsons and Legal Aid commenced efforts to collect the judgments, which included pursuing Ronwin to South Dakota and Minnesota. In 1993, those efforts moved to Missouri when they registered the judgments in this state. In July, 1993, they filed suit in Camden County against Ronwin and Arkiana, an Iowa general partnership, alleging that Arkiana was the owner of certain Camden County real estate (Lot 38–C). They sought a judgment declaring that Ron-

---

1. The basis of the judgments for sanctions is not disclosed in the record before us other than the admission by Ronwin that it was based on a provision in Iowa's Rules of Civil Procedure similar to Missouri Rule 55.03 and Federal Rule 11.

win was the sole remaining partner in Arkiana, that the partnership had been dissolved, and ordering execution against Lot 38–C to satisfy their judgment.

The Maes were subsequently joined as defendants, and an amended petition was filed adding a count for fraudulent transfer in which it was alleged that Ronwin had transferred his interest in Arkiana to the Maes with the intent to hinder, delay or defraud his creditors. Maes filed counterclaims alleging fraud and slander of title. All of the claims except the original declaratory judgment action were severed for trial at a later time. The declaratory judgment action was heard on April 18, 1994 and resulted in a judgment holding that Arkiana was an existing partnership, but that Ronwin had transferred all of his interest in that partnership to Maes in May, 1991.[2]

In May, 1995, trial was held on Dickinsons' and Legal Aid's claim against Ronwin for fraudulent transfer, and on Maes' counterclaims against Dickinsons and Legal Aid for fraud and slander of title. The following is the pertinent factual history relating to those claims.

Arkiana began with a partnership agreement between Ronwin and Melvin Lynn, Jr. in May, 1982. Apparently, the sole asset of Arkiana was Lot 38–C, which consisted of 22 acres on the Lake of the Ozarks with 450 feet of lake frontage. In June, 1985, Lynn transferred all of his interest in Arkiana to Ronwin. At the same time, Ronwin sold Maes a 5% interest in the partnership for $5,000. In July, 1988, Maes purchased another 5% for $6,500. The testimony indicated that Ronwin and Maes had been close friends for several years.

Ronwin testified that he orally agreed to transfer his remaining 90% interest in Arkiana to Maes on May 4 or 5, 1991, approximately two weeks before trial of the case against the Dickinsons was to commence in Iowa. Ronwin later signed an unacknowledged document entitled "Conveyance Of Partnership Interest" which stated that he was thereby transferring and conveying all of

his interest in Arkiana to Maes. The document was dated May 29, 1991, the day before the Iowa trial court directed a verdict for Dickinsons. In support of their claim that Ronwin intended to defraud them by transferring his 90% interest in Arkiana, the Dickinsons and Legal Aid presented evidence that this transfer occurred after Ronwin was told that sanctions would be sought against him at the conclusion of the Iowa trial.

Ronwin testified that the consideration for the May, 1991 transfer was $9,500, $5,000 of which he received in cash when the oral agreement was made, $2,500 paid in cash in October, 1991, and $2,000 paid by check in November, 1992. According to Ronwin, the property was then worth $250,000 (it was listed for sale at that amount in November, 1991), but additional consideration for the transfer included the fact that he had stayed at Maes' Arizona home during visits for several years, thereby saving the expense of staying at hotels.

The Maes' counterclaims for slander of title and fraud are based on quitclaim deeds which were attached as exhibits to the Dickinsons' and Legal Aid's petition for declaratory judgment. We need not further develop the facts relating to these counterclaims because of our determination that issues stemming from their resolution have not been adequately preserved and presented for our review.

On July 27, 1995, the trial court, by its judgment, found that Ronwin conveyed his interest in Arkiana with the intent to hinder, delay and defraud creditors, declared the transfer of Ronwin's 90% interest in Arkiana as null and void, charged Ronwin's interest in Arkiana with the Iowa judgments plus interest, and ordered an execution sale. It also entered a $25,000 judgment against Ronwin for punitive damages. In disposing of Maes' counterclaims, the court found that they had failed to prove the elements of fraud and slander of title and dismissed them.

2. The trial court specifically stated that it had not scrutinized the transaction for fraud because that

issue had been severed for a separate trial.

## JURISDICTIONAL ISSUE

■ Before discussing the merits of this appeal, it is first necessary that we consider matters relating to its unique procedural history. After the trial court entered the judgment referred to above (Judgment No. 1), Appellants filed a timely motion for new trial which was argued and taken under advisement on October 10, 1995. On October 25, 1995, the trial court made the following docket entry:

> The Court sets aside its judgment of 7–27–95 solely for the reason that the Court's father went into the hospital for emergency surgery that was life threatening. The Court was unable to address the issues on the motions until after the time period would have expired. Therefore, the Court is setting aside the judgment solely for the purpose of being able to consider the motions.

On November 7, 1995, Appellants filed a notice of appeal from the July 27, 1995 judgment (Case No. 20589).

The trial court then entered an Amended Judgment and Order on November 22, 1995 (Judgment No. 2) in which it explained its docket entry and made certain revisions to its original judgment. Appellants also filed a motion for new trial directed to Judgment No. 2. After that motion was overruled, Appellants filed a notice of appeal with reference to Judgment No. 2 (Case No. 20691). There are, therefore, two appeals filed in this case.

■ The trial court retains control of its judgment and may, upon notice and for good cause, vacate, reopen, correct, amend, or modify it during a period of thirty days following its entry. Rule 75.01.[3] During that thirty-day period, the trial court may, on its own initiative, also order a new trial "for any reason for which it might have granted a new trial on motion of a party...." *Id.* After the thirty-day period, however, the trial court's jurisdiction over its judgment is confined to the grant of relief sought by a party in an after trial motion and for the reasons presented in that motion. *State ex rel. Missouri Highway & Transp. Comm'n v. Christ-*

*ie,* 855 S.W.2d 380, 382 (Mo.App.W.D.1993); *Kincaid Enterprises, Inc. v. Porter,* 812 S.W.2d 892, 895 (Mo.App.W.D.1991); *Hopkins v. North American Co. for Life & Health Ins.,* 594 S.W.2d 310, 317 (Mo.App. S.D.1980).

In the instant case, the order entered by the trial court on October 25 was more than thirty days after it entered Judgment No. 1, and was for reasons not contained in the after trial motion. That order was, therefore, void. *Hopkins v. North American Co. for Life & Health Ins.,* 594 S.W.2d at 317. We treat it as having no legal force or effect, absolutely null, and without legal efficacy. *See K & K Investments, Inc. v. McCoy,* 875 S.W.2d 593, 596 (Mo.App.E.D.1994). Being void, the court's order did not rule the motion for new trial. Pursuant to Rule 78.06, the motion for new trial is, therefore, considered as having been overruled for all purposes ninety days after it was filed, to wit: November 2, 1995. These circumstances, together with the Appellants' timely notice of appeal from Judgment No. 1, results in that judgment being before this court for review.

Judgment No. 2 was entered more than thirty days after the entry of Judgment No. 1, after Judgment No. 1 became final, and after a timely notice of appeal had been filed. It was, therefore, also void and a nullity. *See Mercantile Trust Co. v. Holst,* 665 S.W.2d 370, 371 (Mo.App.E.D.1984).

## OTHER PRELIMINARY MATTERS

Other preliminary matters must also be discussed. Ronwin, who represented that he is a member of the bar of Iowa, filed a statement with the trial court pursuant to Rule 9.03 in which he identified a Missouri attorney as associate counsel in the case. That attorney later filed an entry of appearance. Because of questions raised by this court at oral argument concerning whether Ronwin could appear on behalf of Maes in addition to himself, he has now filed a motion requesting that we recognize his appearance and argument here as being on behalf of Maes as well as himself. That motion is sustained.

---

3. All references to rules are to Missouri Rules of Civil Procedure (1995), unless otherwise noted.

Appellants also filed a "Motion To Discard" a part of Respondents' brief because it included copies of three exhibits. They argue that two of the exhibits are not in the record before this court. That contention is incorrect. This motion is, therefore, denied.

## STANDARD OF REVIEW

This being a court-tried case, the standard of review is as provided in Rule 73.01 and interpreted in *Murphy v. Carron*, 536 S.W.2d 30, 31–32 (Mo. banc 1976). Accordingly, the judgment will be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously applies or declares the law. *Id.* at 32. Credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which may believe none, part or all of the testimony of any witness. *Matthews v. Moore*, 911 S.W.2d 664, 668 (Mo.App.S.D. 1995). On the appeal of a court-tried case, the appellate court defers to the trial court on factual issues because it is in a better position to not only judge the credibility of witnesses directly, but also their sincerity and character as well as other trial intangibles which may not be completely revealed by the record. *Id.*

In this case, we note that the applicable statute concerning fraudulent transfers is § 428.020, RSMo 1986, which provides, in pertinent part:

> Every conveyance or assignment in writing, or otherwise, of any estate or interest in lands, or in goods and chattels, or in things in action, ... made or contrived with the intent to hinder, delay or defraud creditors of their lawful actions, damages, forfeitures, debts or demands, ... shall be from henceforth deemed and taken, as against said creditors and purchasers, prior and subsequent, to be clearly and utterly void.[4]

## DISCUSSION OF ISSUES

Appellants first argue that the transfer in question should not have been set aside as fraudulent because when it was made Ronwin had sufficient other funds to pay his creditors. They argue that this is true even if the Dickinsons and Legal Aid had been creditors at the time of the transfer. They point out that the questioned transfer to Maes occurred in May, 1991 before the directed verdict in the Iowa case was entered on May 30, 1991; the motions for sanctions upon which the judgments were ultimately entered against Ronwin were filed in June, 1991; Ronwin withdrew funds totaling $44,-000 from a bank account in July and August, 1991; and the judgment against Ronwin for sanctions was entered in September, 1991.

Appellants' contention in this point is premised on their assumption that solvency at the time of a conveyance precludes a finding that it was fraudulent. Missouri cases contain divergent views concerning the significance of the solvency of a person who allegedly committed a fraudulent transfer. Some courts have held that an intent to hinder, delay or defraud creditors is shown by the act of conveying all of a debtor's property. *See Citizens' Bank of Hayti v. McElvain*, 280 Mo. 505, 219 S.W. 75, 77 (1920). Other courts have held that a conveyance is not fraudulent in law or voidable if the grantor retains assets sufficient to pay his creditors. *See Saunders v. Hackley & Hume Co.*, 275 Mo. 41, 204 S.W. 269, 271 (1918); *McCluer v. White*, 338 Mo. 1017, 93 S.W.2d 696, 700 (1936). In *Cohoon v. Cohoon*, 627 S.W.2d 304, 307 (Mo.App.E.D. 1981), the appellate court referred to evidence that the debtor had sufficient property to pay the debt in affirming the trial court's decision that a conveyance was not fraudulent.

Other Missouri courts, however, have not treated the solvency issue as being determinative. In *Daggs v. McDermott*, 327 Mo. 73, 34 S.W.2d 46, 50 (1931), the Missouri Supreme Court said that when a conveyance is found to have been fraudulently made with the intent to hinder or delay creditors "the objection does not then lie that there are other lands which might have been levied

---

4. Section 428.020, RSMo 1986, was repealed in 1992 and replaced by §§ 428.005–.059, which is similar to the Uniform Fraudulent Transfers Act.

Section 428.020, RSMo 1986, is applicable here because the conveyance in question occurred in 1991.

upon or that the debtor is not insolvent." In *Graff v. Continental Auto Ins. Underwriters,* 225 Mo.App. 85, 35 S.W.2d 926, 931–32 (E.D. 1931), the court said:

> We agree with the garnishee that inasmuch as the release purports to have been given for a valuable consideration prior to the institution of the garnishment proceeding, the burden rested with plaintiff to show its fraudulent purpose; *but we do not agree that his right to recover was wholly dependent upon a showing of defendant's insolvency.* We say this for the reason that *the statute denominates the transaction as fraudulent and void where its purpose is to hinder or delay creditors,* and consequently the authorities hold that if the intent underlying the transaction was to do that which is forbidden by statute, then it is fraudulent and void as to creditors, *whether the debtor be solvent at the time or not....* The insolvency of the debtor will be highly material evidence of fraud, but after all it is the fraudulent intent common to both participating parties, and not the mere fact of insolvency, which will warrant the avoidance of such a transaction. (emphasis ours)

In *Vaughn v. Christian,* 472 S.W.2d 337, 339 (Mo.1971), the Missouri Supreme Court held that insolvency of a grantor is not determinative of whether a conveyance for consideration was fraudulent. It said that "[i]nsolvency is only a factor to consider in the determination of whether the fraudulent intent required under Sec. 428.020 ... was established." This reasoning is supported by the cases holding that insolvency following a conveyance is only one of the "badges of fraud" to be considered in determining the fraudulent intent of the grantor. *South Side Nat'l Bank in St. Louis v. Winfield Fin. Serv. Corp.,* 783 S.W.2d 140, 143–44 (Mo.App. E.D.1989).

We need not decide which of the views concerning the solvency issue is controlling here. This is because Appellants apparently also base this point on the assumption that the trial court was required to believe that the evidence established that Ronwin was solvent when the transfer of his interest in Arkiana was made. As indicated earlier, however, the trial court was not required to believe any of the evidence. Additionally, even if Ronwin's debts at the time of the conveyance were minimal, as he asserted at trial, the fact that he withdrew a *total* of over $44,000 from a bank account in July and August, 1991 does not necessarily establish the extent of his assets when the questioned transfer was made to Maes in May, 1991. Likewise, the evidence presented by Ronwin does not even establish that he had $44,000 in cash in the bank at one time. That evidence consisted of his testimony and copies of withdrawal slips demonstrating that he made the following withdrawals totaling $44,-747.11: 7/5/91—$9,000; 7/19/91—$6,347.11; 8/12/91—$9,800; 8/17/91—$9,800; 8/22/91—$9,800. There was no evidence concerning the balance of this or any other bank account at the time of each withdrawal, showing activity in the account between withdrawals, or demonstrating what happened to the money withdrawn. Ronwin testified that he had another smaller bank account, without stating its balance at any particular time, and also that he was able to pay his debts until the last of the withdrawals mentioned above. We also note that there was testimony that the reason Ronwin wanted $5,000 in cash as a part payment for his 90% interest in Arkiana was to pay for a European trip he was planning that summer. There was no explanation about why that would be true if he had $44,000 in the bank.

The trial court was not required to believe Ronwin's testimony regarding his finances. Additionally, the evidence presented, if believed, did not establish Ronwin's solvency with regard to these judgments at the time of the transfer.[5] We conclude that the trial court did not err as alleged in this point. It is, therefore, denied.

█ We construe Appellants' fourth point relied on, under a liberal interpretation, as being premised on the contention that the

---

5. Appellants state in their point that the question of solvency at the time of the transfer applies to existing as well as subsequent creditors.

evidence was insufficient to "establish any badges of fraud." We disagree.

■ "In order to set aside a conveyance as being in fraud of creditors, it must be shown that the conveyance was made with an intent to hinder, delay or defraud creditors." *Mark Twain Kansas City Bank v. Riccardi,* 865 S.W.2d 425, 427 (Mo.App.W.D.1993). The intent to defraud must be proven by clear and convincing evidence. *South Side Nat'l Bank in St. Louis v. Winfield Fin. Serv. Corp.,* 783 S.W.2d at 143. Because fraudulent intent is rarely proven by direct evidence, "Missouri courts are willing to look to 'badges of fraud,' which may be considered to determine the presence of fraud, since they are items which so frequently attend conveyances to hinder, delay or defraud creditors." *Citizens Nat'l Bank of Maryville v. Cook,* 857 S.W.2d 502, 505 (Mo.App.W.D. 1993).

■ "The courts have recognized several 'badges of fraud' which include: (1) a conveyance to a spouse or near relative; (2) inadequacy of consideration; (3) transactions different from the usual method of transacting business; (4) transfers in anticipation of suit or execution; (5) retention of possession by the debtor; (6) the transfer of all or nearly all of the debtor's property; (7) insolvency caused by the transfer; and (8) failure to produce rebutting evidence when circumstances surrounding the transfer are suspicious." *Nance v. Nance,* 880 S.W.2d 341, 346 (Mo.App.E.D.1994). Although none of the badges of fraud existing alone establishes fraud, a concurrence of several of them raises a presumption of fraud. *South Side Nat'l Bank in St. Louis v. Winfield Fin. Serv. Corp.,* 783 S.W.2d at 144. In the instant case, the trial court found the existence of several "badges of fraud."

The court found that the consideration for the transfer was inadequate. It noted that on two earlier occasions Ronwin had transferred a 5% interest in Arkiana to Maes. The consideration paid for those transfers was approximately $11,500. The consideration paid for the transfer in question, however, was a total of $9,500 for a 90% interest. At the time of that transfer, the sole asset of Arkiana was a parcel of real estate which was both listed for sale and valued by Ronwin at $250,000. Ronwin contended at trial that additional consideration for the transfer was the fact that he had stayed in the Maes home in Arizona during numerous trips since 1977. He valued that at more than $50,000. The trial court, however, was not required to believe that testimony and obviously did not. There was sufficient evidence to support a finding of inadequate consideration.

■ The trial court also found that the transfer of Ronwin's 90% interest in Arkiana was in anticipation of a judgment against him. It noted that what Ronwin characterized as a "memorialization" of the transfer was executed the day before the directed verdict against him in the Iowa case. Here, the trial court obviously did not believe testimony that Ronwin had made an agreement to transfer the interest in Arkiana three and one-half weeks earlier, and chose to believe testimony that Ronwin was told during the trial that sanctions would be sought against him at the conclusion of the case. "Conveyances made for the purpose of defeating an anticipated judgment in a case pending or about to be commenced are in fraud of creditors and void as to such plaintiff." *George v. Surkamp,* 336 Mo. 1, 76 S.W.2d 368, 370–71 (1934). In this regard, we also note that there was testimony that Ronwin's demands for settlement in the Iowa case went from $250,000 to $10,000 after he was told that sanctions would be sought. The trial court did not err in finding this badge of fraud.

Another badge of fraud found by the trial court was the close relationship between Ronwin and Maes. Missouri courts have most often defined this "badge" as a conveyance to a spouse or near relative. *See Nance v. Nance,* 880 S.W.2d at 346. Other courts have described it as a confidential or close relationship between the parties. *See Castorina v. Herrmann,* 340 Mo. 1026, 104 S.W.2d 297, 302 (1937); *Conrad v. Diehl,* 344 Mo. 811, 129 S.W.2d 870, 877 (1939). In *Florida Coast Bank of Broward County v. Hines,* 646 S.W.2d 110, 118 (Mo.App.W.D.1983), the court referred to this "badge" as "the existence or lack thereof of a close relationship

between the parties to the property transfer."

In the instant case, the evidence clearly demonstrated a close personal relationship between Ronwin and the Maes. Ronwin testified that he had no family and gave examples of his close personal relationship with the Maes. Mr. Maes agreed at trial that he and his wife were like relatives to Ronwin and that they were the "closest" people to him. Under these circumstances the trial court did not err in finding that the relationship between Ronwin and the Maes was also a "badge of fraud."

Another circumstance available for consideration as a badge of fraud is a transaction different than the usual method of transacting business. *Community Fed. Sav. & Loan Ass'n v. Boyer,* 710 S.W.2d 332, 334 (Mo.App. E.D.1986). Here, Ronwin had earlier transferred interests in the partnership by way of amendments to the partnership agreement, bearing the notarized signatures of himself and the Maes. The transfer in question, however, was signed only by Ronwin and was not notarized.

We recognize that the trial court did not rely on this as a badge of fraud in the instant case. On appeal from a court-tried case, however, an appellate court is concerned with the correctness of the result, not with the route taken to reach that result. *RCA Mut. Ins. Co. v. Sanborn,* 918 S.W.2d 893, 897 (Mo.App.S.D.1996).

We hold that there was evidence to support the finding of these badges of fraud, and that they were sufficient to support a finding of fraudulent intent in making the transfer in question.

Appellants' remaining three points relied on are as follows:

### Point III

As *subsequent* creditors, Respondents were required to and failed to prove *actual* fraud. The Circuit Court treated the Respondents as *existing* creditors and used a *constructive* fraud approach in erroneously concluding that the 1991 conveyance transaction was fraudulent.

### Point V

In JUDGMENT I, the Circuit Court awarded a sanction against RONWIN in the amount of $25,000. Assuming *arguendo,* that the 1991 conveyance transaction was fraudulent, no grounds exist for a punitive damages award against RONWIN. In JUDGMENT II, the Circuit Court deleted the punitive damages award.

### Point VI

The Circuit Court dismissed Appellants MAES' Counterclaim on two grounds: (i) that Respondents' lis pendens was being attacked and is immune; and (ii) that Counterclaimants showed no damages. Both grounds are in error and conflict with the uncontradicted facts of record.

Rule 84.04(d) requires that a point relied on "shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." The Missouri Supreme Court interpreted these requirements in *Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978). There the court said:

The dual requirements of Rule 84.04(d) that the point relied on state *wherein* and *why* the action or ruling is claimed to be erroneous are apparently the most common source of error in appellate briefing. Actually, compliance with these requirements is a matter of common sense if counsel bear in mind the informational purpose of the brief. After stating the ruling the trial court actually made, it stands to reason that the point should then specify *why* the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

Importantly, Rule 84.04(d) also provides that "[s]etting out only abstract statements of law without showing how they are related

to any action or ruling of the court is not a compliance with this Rule."

Missouri courts have, on innumerable occasions, reminded counsel of the mandatory requirements of Rule 84.04 and of the fact that violations may result in the abandonment of issues or the dismissal of appeals. *See, e.g., Associates Discount Corp. of Iowa v. Fitzwater,* 518 S.W.2d 474, 477 (Mo.App. W.D.1974); *Jordan v. Stallings,* 911 S.W.2d 653, 664 (Mo.App.S.D.1995).

The significance of points relied on in an appellate brief is obvious from the fact that they provide the identification of the only issues for consideration on appeal. *Gordon v. Tri–State Motor Transit Co.,* 908 S.W.2d 849, 852 (Mo.App.S.D.1995). Nothing is preserved for appellate review if the point relied on is insufficient. *Bentlage v. Springgate,* 793 S.W.2d 228, 231 (Mo.App.S.D.1990).

The points relied on set out above fail to comply with Rule 84.04(d). Points III and V fail to state "wherein" the court's ruling was erroneous. Point VI fails to state "wherein" and "why" the trial court erred. Each point also contains abstract statements of law.

We are compelled to observe also that the statement of facts contained in Appellants' brief is in violation of Rule 84.04(c). That rule requires that "[t]he statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument." Appellants' statement of facts consists primarily of a procedural history of the case. The facts which might otherwise pertain to Appellants' points relied on are contained in one paragraph. That paragraph states only that Ronwin and Maes made an oral agreement for the transfer of Ronwin's interest in Arkiana on May 4–5, 1991, at which time Maes made a partial payment on the consideration; Ronwin prepared a "memorialization" of the conveyance to Maes; at the time of the "memorialization" the Dickinsons and Legal Aid were not creditors of Ronwin; and at the time of the "memorialization," Ronwin then had sufficient money to pay his creditors.

As a result of these briefing violations, Appellants have preserved nothing for our review concerning points III, V and VI. Under such circumstances, we may make a discretionary review for plain error pursuant to Rule 84.13(c). We have done so, but find no such error.[6]

The judgment of the trial court dated July 27, 1995 (Case No. 20589) is affirmed. The judgment entered by the trial court on November 22, 1995 (Case No. 20691) is void and the appeal in that case is dismissed as moot.

PREWITT, J., files opinion concurring in part and dissenting in part.

PREWITT, Judge, concurring in part and dissenting in part.

I raised at oral argument the question of whether appellant Ronwin could represent any of the appellants except himself. At argument, Ronwin acknowledged that he is not a member of the Missouri Bar. I am convinced that he cannot represent the other appellants here.

The joint briefs purporting to be on behalf of all appellants show only appellant Ronwin as attorney for all appellants. The Missouri attorney, who apparently acted as local counsel in the trial, did not appear here either at oral argument or on any documents. There is nothing in the record here showing that the Missouri attorney is still representing anyone in this cause.

I would affirm the judgment as to appellant Ronwin on the basis stated in the majority opinion. I would deny Ronwin's motion requesting that we recognize his appearance as being in behalf of the other appellants and dismiss the appeals of the other appellants because the brief purportedly filed in their behalf was not presented by an attorney authorized to represent them.

---

6. In this regard, we note that Ronwin's argument under Point V is not directed to any issue concerning the availability of punitive damages in an equity case or where there are no actual dam-

ages awarded. Instead, it relates only to the issue of whether there was a showing of a "wrongful act [done] intentionally and without just cause or excuse."